# Supreme Court of Florida

_____

No. SC20-1467
_____

## IN RE: AMENDMENTS TO THE RULES REGULATING THE FLORIDA BAR—BIENNIAL PETITION.

March 3, 2022

PER CURIAM.

Before the Court is the biennial petition of The Florida Bar (Bar) proposing amendments to the Rules Regulating the Florida Bar (Bar Rules).[1] The Bar proposes amending thirty-one existing rules, as well as the addition of one new rule. With some minor modifications, we adopt the amendments proposed by the Bar.

## BACKGROUND

The Bar proposes amending existing Bar Rules: 1-3.2 (Membership Classifications); 1-3.6 (Delinquent Members); 1-3.8 (Right to Inventory); 1-7.3 (Membership Fees); 1-12.1 (Amendment to Rules; Authority; Notice; Procedures; Comments); 1-13.1 (Time);

_____

1. We have jurisdiction. *See* art. V, § 15, Fla. Const.

3-5.2 (Emergency Suspension and Interim Probation or Interim Placement on the Inactive List for Incapacity Not Related to Misconduct); 3-6.1 (Generally); 3-7.1 (Confidentiality); 3-7.7 (Procedures Before Supreme Court of Florida); 4-1.5 (Fees and Costs for Legal Services); 4-1.10 (Imputation of Conflicts of Interest; General Rule); 4-1.14 (Client Under a Disability); 4-5.8 (Procedures for Lawyers Leaving Law Firms and Dissolution of Law Firms); 4-6.1 (Pro Bono Public Service); 4-7.13 (Deceptive and Inherently Misleading Advertisements); 4-7.18 (Direct Contact with Prospective Clients); 5-1.2 (Trust Accounting Records and Procedures); 7-1.3 (Administration); 7-1.4 (Definitions); 7-2.3 (Payments); 7-2.4 (Prerequisites to Payment); 7-2.5 (Claims Ordinarily Denied); 10-2.1 (Generally); 10-2.2 (Form Completion by a Nonlawyer); 10-6.3 (Recommendations and Disposition of Complaints); 10-7.2 (Proceedings for Indirect Criminal Contempt); 14-2.1 (Generally); 14-3.1 (Application Required); 20-5.1 (Generally); and 21-3.1 (Continuing Legal Education). The Bar also proposes the addition of new Bar Rule 6-3.14 (Sunset of Certification Areas).

The Bar's proposals were approved by the Board of Governors of The Florida Bar, and consistent with Bar Rule 1-12.1(g), the Bar

published formal notice of the proposed amendments in *The Florida Bar News.* The notice directed interested persons to file their comments directly with the Court. The Court received two comments expressing support for the proposed amendments to Bar Rule 4-7.13 (Deceptive and Inherently Misleading Advertisements).

Having considered the Bar's petition, the proposed amendments, and the comments filed, we hereby adopt the amendments to the Rules Regulating the Florida Bar proposed by the Bar, with some minor modifications. We explain the modifications below, as well as discuss some of the significant rule amendments.

### AMENDMENTS

First, new subdivision (g) is added to rule 1-3.6 (Delinquent Members) to make clear that a member who fails to file the trust account certificate required in chapter 5 of the Bar Rules will be deemed delinquent, and will be ineligible to practice law in Florida.

Next, several changes are made to rule 1-3.8 (Right to Inventory). The title of subdivision (b) is changed to "Maintenance of Confidentiality," and the subdivision is amended to provide that an inventory lawyer "may seek a protective order from the

appropriate court or take other action necessary to protect confidential information of the subject lawyer's clients." Subdivision (c) (Status and Purpose of Inventory Lawyer) is amended to clarify that an inventory lawyer does not represent the lawyer whose files are being inventoried or that lawyer's clients. Subdivision (d) (Rules of Procedure) is deleted in its entirety, and the remaining subdivisions are redesignated accordingly.

To assist in finding inventory lawyers for the files of lawyers who are deceased, disbarred, or suspended for a lengthy period, or who are either incapacitated or incarcerated, new subdivision (e) (Payment of Inventory Lawyer) is added to rule 1-3.8.  The new subdivision provides that the Bar may pay an inventory attorney a fee for his or her services.  We modify the new subdivision to require that the fee paid by the Bar be "reasonable."

Subdivision (g) (Motions for Dissolution) of rule 3-5.2 (Emergency Suspension and Interim Probation or Interim Placement on the Inactive List for Incapacity Not Related to Misconduct) is amended to preclude the filing of a motion to dissolve or amend an emergency suspension in cases where the Bar has demonstrated

through either a hearing or trial that it is likely to prevail on the merits of the underlying alleged rule violations.

Subdivision (a) (Authorization and Application) of rule 3-6.1 (Generally) is amended to include the phrase "lawyers on the inactive list due to incapacity." This change makes clear that a lawyer who is placed on the inactive list due to incapacity and is employed by a law firm is subject to the same restrictions as a disbarred or suspended lawyer.

Subdivision (j) (Chemical Dependency and Psychological Treatment) of rule 3-7.1 (Confidentiality) is amended to add judges and justices to the category of those whose voluntary treatment for chemical dependency or psychological problems is deemed confidential. This change is aimed at encouraging members of the Florida judiciary to seek treatment when necessary for chemical dependency and mental health issues.

New subdivision (b)(12) (Examples of Deceptive and Inherently Misleading Advertisements) and a corresponding comment are added to rule 4-7.13 (Deceptive and Inherently Misleading Advertisements). The new subdivision prohibits as a deceptive and misleading advertisement "a statement or implication that another

lawyer or law firm is part of, is associated with, or affiliated with the advertising law firm when that is not the case, including contact or other information presented in a way that misleads a person searching for a particular lawyer or law firm, or for information regarding a particular lawyer or law firm, to unknowingly contact a different lawyer or law firm." The corresponding new comment provides explanation and examples of the types of advertisements prohibited by new subdivision (b)(12).

A new comment with the heading "Permissible contact" is added to rule 4-7.18 (Direct Contact with Prospective Clients). The new comment explains that a lawyer may initiate the mutual exchange of contact information at business-related events and on business-related social media platforms if the lawyer initiates no discussion of specific legal matters. The comment also makes clear that a lawyer who knows a person has a specific legal problem may not go to a specific event in order to initiate such an exchange and that "[a]n accident scene, a hospital room of an injured person, or a doctor's office are not business or professional conferences or meetings."

New rule 6-3.14 (Sunset of Certification Areas) provides that the Board of Legal Specialization and Education will petition the Court to close a certification area to initial applicants if any certification committee has not received an initial certification application for five consecutive years.

Rule 10-2.1 (Generally) is amended to place definition terms within quotation marks and to reorder the definitions in alphabetical order. The phrase "or been revoked" is added to the definition in newly redesignated subdivision (g) (Nonlawyer or Nonattorney) to reflect disciplinary revocation as a form of disbarment.

Subdivision (c)(2) (As to All Legal Forms) of rule 10-2.2 (Form Completion by a Nonlawyer) is amended to conform the definition of paralegal to the definition for the term in rule 10-2.1. We modify the Bar's proposal to correctly reference the newly redesignated definition for paralegal in subdivision (h) of rule 10-2.1.

Lastly, because there is no formal certification for mediators and arbitrators of Bar matters, the word "certification" in subdivision (a) (Applications) of Bar Rule 14-3.1 (Application Required) is replaced with the word "approval." For consistency, we

make the same change to the title of subchapter 14-3, so that the title now reads "Approval of Program Mediators and Arbitrators."

## CONCLUSION

Accordingly, the Rules Regulating the Florida Bar are amended as set forth in the appendix to this opinion. Deletions are indicated by struck-through type, and new language is indicated by underscoring. The amendments shall become effective May 2, 2022, at 12:01 a.m.

It is so ordered.

CANADY, C.J., and POLSTON, LABARGA, LAWSON, MUÑIZ, COURIEL, and GROSSHANS, JJ., concur.

THE FILING OF A MOTION FOR REHEARING SHALL NOT ALTER THE EFFECTIVE DATE OF THESE AMENDMENTS.

Original Proceeding – Florida Rules Regulating the Florida Bar

Joshua E. Doyle, Executive Director, Michael G. Tanner, President, Gary S. Lesser, President-elect, Gypsy Bailey, Director, Division of Ethics and Consumer Protection, and Elizabeth Clark Tarbert, Director, Lawyer Regulation Division, The Florida Bar, Tallahassee, Florida,

for Petitioner

Alex Hanna, Miami, Florida, and Damien Prosser of Morgan & Morgan, P.A., Orlando, Florida,

Responding with comments

# Appendix

## RULE 1-3.2 MEMBERSHIP CLASSIFICATIONS

**(a)  Members in Good Standing.**

(1)  Members of The Florida Bar in good standing means only those persons licensed to practice law in Florida who have paid annual membership fees for the current year and who are not retired, resigned, revoked, disbarred, delinquent, on the inactive list for incapacity, or suspended.

(2)  Members of The Florida Bar who have elected inactive status, who have paid annual membership fees for the current year, and who are not retired, resigned, revoked, disbarred, delinquent, suspended, or on the inactive list for incapacity, are considered to be in good standing only for purposes of obtaining a certificate of good standing and for no other purpose.  A certificate of good standing issued to an inactive member will reflect the member's inactive status.

**(b)**  [No Change]

## RULE 1-3.6  DELINQUENT MEMBERS

Any person ~~now or hereafter~~ licensed to practice law in Florida ~~shall be~~is deemed a delinquent member if the member fails to:

**(a)**  ~~fails to~~ pay membership fees;

**(b)**  ~~fails to~~ comply with continuing legal education or basic skills course requirements;

**(c)**  ~~fails to~~ pay the costs assessed in diversion or disciplinary cases within 30 days after the disciplinary decision or diversion recommendation becomes final, unless ~~such~~the time is extended by the board of governors for good cause shown;

**(d)**  ~~fails to~~ make restitution imposed in diversion cases or disciplinary proceedings within the time specified in the order in ~~such~~those cases or proceedings;

- 9 -

**(e)** ~~fails to~~ pay fees imposed as part of diversion for more than 30 days after the diversion recommendation became final, unless ~~such~~the time is extended by the board of governors for good cause shown;~~ or~~

**(f)** ~~fails to~~ pay an award entered in fee arbitration proceedings conducted under the authority stated elsewhere in these rules and 30 days or more have elapsed since the date on which the award became final; or

**(g)** file the trust account certificate required in chapter 5 of these rules.

Delinquent members ~~shall not engage~~are not members of The Florida Bar in good standing and therefore are prohibited from engaging in the practice of law in Florida ~~nor be~~and are not entitled to any privileges and benefits accorded to members of The Florida Bar in good standing.

## RULE 1-3.8 RIGHT TO INVENTORY

**(a) Appointment; Grounds; Authority.** Whenever ~~an attorney~~a lawyer is suspended, disbarred, becomes a delinquent member, abandons a practice, disappears, dies, or suffers an involuntary leave of absence due to military service, catastrophic illness, or injury, and no partner, personal representative, or other responsible party capable of conducting the ~~attorney's~~lawyer's affairs is known to exist, the appropriate circuit court, ~~up~~on proper proof of the fact, may appoint ~~an attorney or attorneys~~a lawyer or lawyers to inventory the files of ~~the subject attorney~~that lawyer (~~hereinafter referred to as~~ "the "subject ~~attorney~~lawyer") and to ~~take such action~~act as ~~seems indicated~~necessary to protect the interests of the subject lawyer's clients ~~of the subject attorney~~.

**(b) Maintenance of ~~Attorney-Client Confidences~~Confidentiality.** Any ~~attorney~~lawyer ~~so~~ appointed to inventory a subject lawyer's files ~~shall~~must not disclose any information contained in the inventoried files ~~so inventoried~~ without the consent of the client to whom ~~such~~the files ~~relates~~relate, except as necessary to carry out the order of the court that appointed the ~~attorney~~lawyer to make the inventory. Lawyers appointed to

- 10 -

inventory files may seek a protective order from the appropriate court or take other action necessary to protect confidential information of the subject lawyer's clients.

**(c) Status and Purpose of Inventory ~~Attorney~~Lawyer.** ~~Nothing herein creates an attorney and client, fiduciary, or other relationship between the inventory attorney and the subject attorney.~~ Nothing in this rule creates the duties or obligations of a lawyer-client, fiduciary, or other relationship between a lawyer appointed to inventory a subject lawyer's files and the subject lawyer's clients except for those duties and obligations specifically set forth in this rule and those duties and obligations inherent in the specific tasks undertaken by the inventory lawyer. The purpose of appointing an inventory ~~attorney~~lawyer is to avoid prejudice to the subject lawyer's clients ~~of the subject attorney~~ and, as a secondary result, prevent or reduce claims against the subject ~~attorney~~lawyer ~~for such prejudice as may otherwise occur~~.

**~~(d) Rules of Procedure. The Florida Rules of Civil Procedure are applicable to proceedings under this rule.~~**

**~~(e)~~(d) Designation of Inventory ~~Attorney~~Lawyer.** Each member of the bar who practices law in Florida ~~shall~~must designate another member of The Florida Bar who has agreed to serve as inventory ~~attorney~~lawyer under this rule~~; provided, however,~~ except that no designation is required with respect to any portion of the member's practice as an employee of a governmental entity. When the services of an inventory ~~attorney~~lawyer become necessary, an authorized representative of The Florida Bar ~~shall~~will contact the designated member and determine the member's current willingness to serve. The designated member ~~shall~~is not ~~be~~under any obligation to serve as inventory ~~attorney~~lawyer.

**(e) Payment of Inventory Lawyer.** The Florida Bar may pay a reasonable fee set by the bar's executive director as approved by the board of governors and within the bar's annual budget for that year to a lawyer who agrees to conduct an inventory under this rule. Payment by The Florida Bar to an inventory lawyer will be made only with prior approval by the bar, on an application approved by the bar, and under parameters set by the bar.

# RULE 1-7.3 MEMBERSHIP FEES

**(a)  Membership Fees Requirement.**  On or before July 1 of each year, every member of The Florida Bar must pay annual membership fees to The Florida Bar in the amount of $265 per annum, except those members who have retired, resigned, been revoked or disbarred, or been classified as inactive members pursuant tounder rule 3-7.13, must pay annual membership fees to The Florida Bar in the amount of $265 per annum.  Every member of The Florida Bar must pay the membership fee and concurrently file a fee statement with any information the board of governors requires.

**(b)  Prorated Membership Fees.**  Membership fees will be prorated for anyone admitted to The Florida Bar after July 1 of any fiscal year.  The prorated amount will be based on the number of full calendar months remaining in the fiscal year at the time of their admission.

Unpaid prorated membership fees will be added to the next annual membership fees bill with no penalty to the member.  The Florida Bar must receive the combined prorated and annual membership fees payment on or before August 15 of the first full year fees are due unless the member elects to pay by installment.

**(c)  Installment Payment of Membership Fees.**  Members of The Florida Bar may elect to pay annual membership fees in 3 equal installments as follows:

(1)  in the second and third year of their admission to The Florida Bar;

(2)  if the member is employed by a federal, state, or local government in a non-elected position that requires the individual to maintain membership in good standing within The Florida Bar; or

(3)  if the member is experiencing an undue hardship.

A member must notify The Florida Bar of the intention to pay membership fees in installments.  The first installment payment

must be postmarked no later than August 15.  The second and third installment payments must be postmarked no later than November 1 and February 1, respectively.

Second and/or third installment payments postmarked after their respective due date(s)dates are subject to a one-time late charge of $50.  The late charge must accompany the final payment.  The executive director, with concurrence of the executive committee, may adjust the late charge.

The executive directorFlorida Bar will send written notice to the last official bar address of each member who has not paid membership fees and late fees by February 1.  Written notice may be by registered or certified mail, or by return receipt electronic mail.  The member will be a delinquent member if membership fees and late charges are not paid by March 15.  The executive director, with concurrence of the executive committee, may adjust these fees or due date for good cause.

Each member who elects to pay annual membership fees in installments may be charged an additional administrative fee set by the board of governors to defray the costs of this activity.

**(d)**  [No Change]

**(e)  Late Payment of Membership Fees.**  Payment of annual membership fees must be postmarked no later than August 15.  Membership fees payments postmarked after August 15 must be accompanied by a late charge of $50.  The executive directorFlorida Bar will send written notice to the last official bar address of each member whose membership fees have not been paid by August 15.  Written notice may be by registered or certified mail, or by return receipt electronic mail.  The member is considered a delinquent member upon failure to pay membership fees and any late charges by September 30, unless adjusted by the executive director with concurrence of the executive committee.

**(f)  Membership Fees Exemption for Activated Reserve Members of the Armed Services.**  Members of The Florida Bar engaged in reserve military service in the Armed Forces of the United States who are called to active duty for 30 days or more

during the bar's fiscal year are exempt from the payment of membership fees.  The Armed Forces of the United States includes the United States Army, Air Force, Navy, Marine Corps, Coast Guard, as well as the Army National Guard, Army Reserve, Navy Reserve, Marine Corps Reserve, the Air National Guard of the United States, the Air Force Reserve, and the Coast Guard Reserve. Requests for an exemption must be made within 15 days before the date that membership fees are due each year or within 15 days of activation to duty of a reserve member.  To the extent membership fees were paid despite qualifying for this exemption, ~~such~~the membership fee will be reimbursed by The Florida Bar within 30 days of receipt of a member's request for exemption.  Within 30 days of leaving active duty status, the member must report to The Florida Bar that ~~he or she~~the member is no longer on active duty status in the United States Armed Forces.

## RULE 1-12.1 AMENDMENT TO RULES; AUTHORITY; NOTICE; PROCEDURES; COMMENTS

**(a)-(c)**  [No Change]

**(d)  Notice of Proposed Board Action.**  ~~Notice of the proposed action of the board on a proposed amendment will be given~~The Florida Bar will give notice of proposed board of governors action on a proposed amendment in an edition of *The Florida Bar News* and on The Florida Bar website prior to the meeting of the board at which the board action is taken.  The notice will identify the rule(s) to be amended and state in general terms the nature of the proposed amendments.

**(e)**  [No Change]

**(f)  Approval of Amendments.**  Amendments to these rules other than chapters 7 and 9~~,~~ ~~as well as~~and the standards for ~~the~~existing individual areas of certification within chapter 6 of these Rules Regulating The Florida Bar must be by petition to the Supreme Court of Florida.  Petitions to amend these Rules Regulating The Florida Bar may be filed by the board of governors or by 50 members in good standing~~, provided that any amendments proposed by members of the bar must be filed 90 days after filing~~

~~them with The Florida Bar~~.  Amendments proposed by bar members must be filed with The Florida Bar's executive director at least 90 days before the petition is filed with the Supreme Court of Florida.

**(g)-(j)**  [No Change]

## RULE 1-13.1 TIME

**(a)**  [No Change]

**(b)  Additional Time after Service by Mail ~~or E-mail~~.**  When a person ~~has the right or is required to do some~~may or must act ~~or take some proceeding~~ within a prescribed period after service of a notice or other ~~paper~~document and the notice or ~~paper~~other document is served by mail ~~or e-mail~~, 5 days will be added to the prescribed period.

## RULE 3-5.2 EMERGENCY SUSPENSION AND INTERIM PROBATION OR INTERIM PLACEMENT ON THE INACTIVE LIST FOR INCAPACITY NOT RELATED TO MISCONDUCT

**(a)  Petition for Emergency Suspension.**

(1)  *Great Public Harm.*  ~~On petition of The Florida Bar, authorized by its president, president-elect, or executive director, supported by 1 or more affidavits demonstrating facts personally known to the affiants that, if unrebutted, would establish clearly and convincingly that a lawyer appears to be causing great public harm, the~~The Supreme Court of Florida may issue an order suspending the lawyer on an emergency basis on petition of The Florida Bar, authorized by its president, president-elect, or executive director and supported by 1 or more affidavits demonstrating facts personally known to the affiants that, if unrebutted, would establish clearly and convincingly that a lawyer appears to be causing great public harm.

(2)  *Discipline by Foreign Jurisdiction.*  ~~On petition of The Florida Bar, authorized by its president, president-elect, or executive director, supported by a certified copy of an order of a foreign disciplinary jurisdiction suspending or disbarring a lawyer from the practice of law, the~~The Supreme Court of Florida

may issue an order suspending the lawyer on an emergency basis on petition of The Florida Bar, authorized by its president, president-elect, or executive director and supported by a certified copy of an order of a foreign disciplinary jurisdiction suspending or disbarring a lawyer from the practice of law under rule 3-7.2. ~~See subdivision (*l*) of rule 3-7.2.~~

(3)  *Formal Complaint, Answer, and Defenses.*  A petition for emergency suspension ~~will~~ also constitute<u>s</u> a formal complaint. The respondent ~~will have~~<u>has</u> 20 days after docketing by the Supreme Court of Florida of its order granting the bar's petition for emergency suspension in which to file an answer and any affirmative defenses to the bar's petition.

**(b)  Petition for Interim Probation or Interim Placement on the Inactive List for Incapacity Not Related to Misconduct.**  The Supreme Court of Florida may issue an order placing a lawyer on interim probation~~,~~ under the conditions provided in subdivision (c) of rule 3-5.1 or placing the lawyer on the inactive list for incapacity not related to misconduct as provided in rule 3-7.13.  ~~Such~~<u>The</u> order may be issued ~~up~~on petition of The Florida Bar, authorized by its president, president-elect, or executive director~~,~~ <u>and</u> supported by 1 or more affidavits demonstrating facts personally known to the affiants that, if unrebutted, would establish clearly and convincingly that conditions or restrictions on a lawyer's privilege to practice law in Florida are necessary ~~for protection of~~<u>to protect</u> the public.  This petition ~~will~~ also constitute<u>s</u> the formal complaint. The respondent ~~will have~~<u>has</u> 20 days after docketing by the Supreme Court of Florida of its order granting the bar's petition for interim probation in which to file an answer and any affirmative defenses to the bar's petition.

**(c)  Trust Accounts.**  Any order of emergency suspension or probation that restricts the attorney in maintaining a trust account will be served on the respondent and any bank or other financial institution maintaining an account against which the respondent may make withdrawals.  The order ~~will~~ serve<u>s</u> as an injunction to prevent the bank or financial institution from making further payment from the trust account or accounts on any obligation except in accordance with restrictions imposed by the court

through subsequent orders issued by a court-appointed referee. Bar counsel will serve a copy of the Supreme Court of Florida's order freezing a lawyer's trust account via first class mail on ~~the bank(s)~~any bank in which the respondent's trust account is held.

(1)  [No Change]

(2)  Bar counsel and bar auditors will provide information to the appointed referee from bar audits and other existing information regarding persons claiming ownership of frozen trust account funds.  The bar will notify persons known to bar staff in writing via regular first class mail of their possible interest in funds contained in the frozen trust account.  The notices will include a copy of the form of a petition requesting release of frozen trust account funds~~,~~ to be filed with the referee and instructions for completing the form.  The bar will publish~~,~~ in the local county or city newspaper published where the lawyer practiced before suspension~~,~~ a notice informing the public that the lawyer's trust account has been frozen and those persons with claims on the funds should contact listed bar counsel within 30 days after publication whenever possible.

(A)  ~~If there are no responses to the notices mailed and published by the bar within 90 days from the date of the notice or if the amount in the frozen trust account is over $100,000, a receiver may be appointed by the~~The referee may appoint a receiver to determine the person<u>s</u> rightfully entitled to the frozen trust funds if there are no responses to the notices mailed and published by the bar within 90 days from the date of the notice or if the amount in the frozen trust account is over $100,000.  The receiver will be paid from the corpus of the trust funds unless the referee orders otherwise.

(B)  ~~In all other instances, a~~<u>A</u> referee ~~shall~~will determine who is entitled to funds in the frozen trust account, unless the amount in the frozen trust account is $5,000 or less, and no persons with potential entitlement to frozen trust account funds respond to the bar's mailed or published notices within 90 days from the date of the notice.  In ~~such~~that event, the funds will be unfrozen.

**(d)  Referee Review of Frozen Trust Account Petitions.**  The referee ~~will~~ determines when and how to pay the claim of any person entitled to funds in the frozen trust account after reviewing the bar's audit report, the lawyer's trust account records, the petitions filed, or the receiver's recommendations.  ~~If~~The referee may hold a hearing if the bar's audit report or other reliable evidence shows that funds have been stolen or misappropriated from the lawyer's trust account~~, then the referee may hold a hearing~~.  Subchapter 3-7 will not apply to a referee hearing under this rule.  No pleadings ~~will~~may be filed~~, only~~ other than petitions requesting release of frozen trust account funds.  The parties to this referee proceeding ~~will be~~are those persons filing a petition requesting release of frozen trust account funds.  The bar ~~will~~is not ~~be~~ a party to the proceeding.  The referee's order ~~will be~~is the final order in the matter unless one of the parties petitions for review of the referee's order to the Supreme Court of Florida.  The sole issue before the referee ~~will be~~is determination of ownership of the frozen trust account funds.  The referee ~~will~~ determines the percentage of monies missing from the respondent's trust account and the amounts owing to those petitioners requesting release of frozen trust account funds.  ~~A~~The referee will order a pro rata distribution ~~is the method of distribution when~~if there are insufficient funds in the account to pay all claims in full.  The referee's ~~decision~~final order is subject only to direct petition for review ~~of the referee's final order~~ by a party claiming an ownership interest in the frozen trust funds.  The petition for review must be filed within 60 days of the referee's final order.  The schedule for filing of briefs in the appellate process ~~will be~~is as set forth in subchapter 3-7 of these rules.

**(e)  Separate Funds in Frozen Trust Accounts.**  The referee will order return of any separate funds to their rightful owner(s) in full ~~upon~~ ~~their~~the filing of a petition requesting release of frozen trust account funds with proof of entitlement to the funds.  Separate funds are monies deposited into the respondent's trust account after the misappropriation, which are not affected by the misappropriation, and funds that have been placed into a separate segregated individual trust account under the individual client's tax identification number.

**(f)  New Cases and Existing Clients**.  Any order of emergency suspension issued under this rule ~~will~~ immediately precludes the ~~attorney~~lawyer from accepting any new cases and, unless otherwise ordered, permits the ~~attorney~~lawyer to continue to represent existing clients for only the first 30 days after issuance of an emergency order.  Any fees paid to the suspended ~~attorney~~lawyer during the 30-day period ~~will~~must be deposited in a trust account from which withdrawals may be made only in accordance with restrictions imposed by the court.

**(g)  Motions for Dissolution.**  The lawyer may move at any time ~~for dissolution~~to dissolve or ~~amendment of~~amend an emergency order by motion filed with the Supreme Court of Florida, ~~a copy of which will be served on bar counsel~~unless the bar has demonstrated, through a hearing or trial, the likelihood of prevailing on the merits on any of the underlying violations of the Rules Regulating The Florida Bar.  The lawyer must serve a copy of the motion on bar counsel.  The motion will not stay any other proceedings ~~and~~or applicable time limitations in the case and, ~~unless the motion fails to state good cause or is procedurally barred as an invalid successive motion,~~ will immediately be assigned to a referee designated by the chief justice, unless the motion fails to state good cause or is procedurally barred as an invalid successive motion.  The filing of the motion will not stay the operation of an order of emergency suspension or interim probation entered under this rule.

**(h)**  [No Change]

**(i)  Hearing on Petition to Terminate or Modify Suspension.**  The referee will hear a motion to terminate or modify a suspension or interim probation imposed under this rule within 7 days of assignment and submit a report and recommendation to the Supreme Court of Florida within 7 days of the hearing date ~~of the hearing~~.  The referee will recommend dissolution or amendment, whichever is appropriate, ~~to the extent that~~if ~~bar counsel~~the bar cannot demonstrate a likelihood of prevailing on the merits on ~~any element~~at least 1 of the underlying ~~rule~~violations of the Rules Regulating The Florida Bar that establishes that the respondent is causing great public harm.

**(j)  Successive Motions Prohibited.**  ~~Successive motions for dissolution will be summarily dismissed by the~~The Supreme Court of Florida will summarily dismiss any successive motions for dissolution ~~to the extent~~ that ~~they~~ raise issues that were, or with due diligence could have been, raised in a prior motion.

**(k)  Review by the Supreme Court of Florida.**  ~~On receipt of the referee's recommended order on the motion for dissolution or amendment, the~~The Supreme Court of Florida will review and act ~~up~~on the referee's findings and recommendations regarding emergency suspensions and interim probations on receipt of the referee's report on the motion for dissolution or amendment.  This subdivision does not apply to a referee's final order to determine ownership of funds in frozen trust accounts.  These final orders of referee are reviewable by the Supreme Court of Florida only if a party timely files a petition for review ~~pursuant to~~under this rule.  Briefing schedules following the petition for review ~~will be~~are as set forth in subchapter 3-7 of these rules.

***(l)*  Hearings on Issues Raised in Petitions for Emergency Suspension or Interim Probation and Sanctions.**  Once the Supreme Court of Florida has granted a petition for emergency suspension or interim probation ~~as set forth~~under ~~in~~ this rule, the referee appointed by the court will hear the matter in the same manner as provided in rule 3-7.6, except that the referee will hear the matter after the lawyer charged has answered the charges in the petition for emergency suspension or interim probation or when the time has expired for filing an answer.  The referee will issue a final report and recommendation within 90 days of appointment.  If the time limit specified in this subdivision is not met, that portion of an emergency order imposing a suspension or interim probation will be automatically dissolved, except ~~up~~on order of the Supreme Court of Florida, provided that any other appropriate disciplinary action on the underlying conduct still may be taken.

**(m)  Proceedings in the Supreme Court of Florida.**  ~~Consideration of the referee's report and recommendation regarding emergency suspension and interim probation will be expedited in the~~The Supreme Court of Florida will expedite consideration of the referee's report and recommendation regarding emergency

suspension and interim probation. ~~If oral argument is granted, the~~The chief justice will schedule oral argument as soon as practicable, if granted.

**(n) Waiver of Time Limits.** The respondent may, at any time, waive the time requirements set forth in this rule by written request made to and approved by the referee assigned to hear the matter.

## RULE 3-6.1 GENERALLY

**(a) Authorization and Application.** Except as limited in this rule, persons or entities providing legal services may employ suspended lawyers, lawyers on the inactive list due to incapacity, and former lawyers who have been disbarred or whose disciplinary resignations or disciplinary revocations have been granted by the ~~Florida~~ Supreme Court of Florida [(for purposes of this rule these lawyers and former lawyers are referred to as "individual(s) subject to this rule")] to perform those services that may ethically be performed by nonlawyers employed by authorized business entities.

An individual subject to this rule is considered employed by an entity providing legal services if the individual is a salaried or hourly employee, volunteer worker, or an independent contractor.

**(b)-(f)** [No Change]

### Comment
[No Change]

## RULE 3-7.1 CONFIDENTIALITY

**(a) Scope of Confidentiality.** All records including files, preliminary investigation reports, interoffice memoranda, records of investigations, and the records in trials and other proceedings under these rules, except those disciplinary matters conducted in circuit courts, are property of The Florida Bar. All of those matters are confidential and will not be disclosed except as provided in these rules. When disclosure is permitted under these rules, it will be limited to information concerning the status of the proceedings and any information that is part of the public record as defined in these rules.

- 21 -

Unless otherwise ordered by this court or the referee in proceedings under these rules, nothing in these rules prohibits the complainant, respondent, or any witness from disclosing the existence of proceedings under these rules, or from disclosing any documents or correspondence served on or provided to those persons except where disclosure is prohibited in ~~Chapter~~chapter 4 of these rules or by statutes and caselaw regarding attorney-client privilege.

(1)-(2)  [No Change]

(3)  *Probable Cause Cases.*  Any disciplinary case in which a finding of probable cause for further disciplinary proceedings has been entered is public information.  For purposes of this subdivision, a finding of probable cause is deemed in those cases authorized by rule 3-3.2(a), for the filing of a formal complaint without the requirement of a finding of probable cause.

(4)-(12)  [No Change]

**(b)  Public Record.**  The public record consists of the record before a grievance committee, the record before a referee, the record before the Supreme Court of Florida, and any reports, correspondence, papers, recordings, ~~and/~~or transcripts of hearings furnished to, served on, or received from the respondent or the complainant.

**(c)-(e)**  [No Change]

**(f)  Notice to Law Firms.**  When a disciplinary file is opened the respondent must disclose to the respondent's current law firm and, if different, the respondent's law firm at the time of the act or acts giving rise to the complaint, ~~the fact~~ that a disciplinary file has been opened.  Disclosure must be in writing and in the following form:

A complaint of unethical conduct against me has been filed with The Florida Bar.  The nature of the allegations are _____.  This notice is provided ~~pursuant to~~under rule 3-7.1(f) of the Rules Regulating The Florida Bar.

The notice must be provided within 15 days of notice that a disciplinary file has been opened and a copy of the above notice must be served on The Florida Bar.

**(g) Production of Disciplinary Records Pursuant to Subpoena.** The Florida Bar, ~~pursuant to~~under a valid subpoena issued by a regulatory agency, may provide any documents that are a portion of the public record, even if the disciplinary proceeding is confidential under these rules. The Florida Bar may charge a reasonable fee for identification of and photocopying the documents.

**(h) Notice to Judges.** Any judge of a court of record, ~~upon~~ inquiry of the judge, will be advised and, absent an inquiry, may be advised as to the status of a confidential disciplinary case and may be provided with a copy of documents in the file that would be part of the public record if the case was not confidential. The judge must maintain the ~~confidentiality of the~~ records' confidentiality and not otherwise disclose the status of the case.

**(i)** [No Change]

**(j) Chemical Dependency and Psychological Treatment.** That a lawyer, judge, or justice has voluntarily sought, received, or accepted treatment for chemical dependency or psychological problems is confidential and will not be admitted as evidence in disciplinary proceedings under these rules unless agreed to by the ~~attorney~~lawyer, judge, or justice who sought, received, or accepted the treatment.

For purposes of this subdivision, a lawyer, judge, or justice is deemed to have voluntarily sought, received, or accepted treatment for chemical dependency or psychological problems if the lawyer, judge, or justice was not under compulsion of law or rule to do so, or if the treatment is not a part of conditional admission to The Florida Bar or of a disciplinary sanction imposed under these rules.

It is the purpose of this subdivision to encourage lawyers, judges, and justices to voluntarily seek advice, counsel, and treatment available to lawyers, judges, and justices, without fear

that the fact it is sought or rendered will or might cause embarrassment in any future disciplinary matter.

**(k)** [No Change]

*(l)* **Disclosure by Waiver of Respondent.** ~~Upon~~On written waiver executed by a respondent, The Florida Bar may disclose the status of otherwise confidential disciplinary proceedings and provide copies of the public record to:

(1)-(4) [No Change]

**(m) Maintaining Confidentiality Required by Rule or Law.** The bar will maintain confidentiality of documents and records in its possession and control as required by applicable federal or state law in accordance with the requirements of Fla. R. Gen. Prac. & Jud. Admin.~~Fla. R. Jud. Admin~~ 2.420. It will be the duty of respondents and other persons submitting documents and information to the bar to notify bar staff that ~~such~~the documents or information contain material that is exempt from disclosure under applicable rule or law and ~~to~~ request that ~~such~~ exempt material be protected and not be considered public record. Requests to exempt from disclosure all or part of any documents or records must be accompanied by reference to the statute or rule applicable to the information for which exemption is claimed.

## RULE 3-7.7 PROCEDURES BEFORE SUPREME COURT OF FLORIDA

All reports of a referee and all judgments entered in proceedings under these rules ~~shall be~~are subject to review by the Supreme Court of Florida in the following manner:

**(a) Right of Review.**

(1) Any party to a proceeding may ~~procure~~request review of all or part of a report of a referee or ~~a~~ judgment~~, or any specified portion thereof,~~ entered under these rules.

(2) The Supreme Court of Florida ~~shall~~ review_s_ all reports and judgments of referees recommending probation, public

- 24 -

reprimand, suspension, disbarment, or ~~resignation~~revocation pending disciplinary proceedings.

(3) A referee's report that does not recommend probation, public reprimand, suspension, disbarment, or ~~resignation~~revocation pending disciplinary proceedings~~, shall be~~ is final if not appealed.

**(b)** [No Change]

**(c) Procedure for Review.** ~~Review by the~~The Supreme Court of Florida ~~shall~~will conduct its review using ~~be in accordance with~~ the following procedures:

(1) *Notice of Intent to Seek Review of Report of Referee.* A party to a bar disciplinary proceeding ~~wishing to~~ seeking review of a report of referee ~~shall~~must give notice of ~~such~~that intent within 60 days of the date on which the referee's report is docketed by the Clerk of the Supreme Court of Florida. ~~Prompt~~The Florida Bar will provide prompt written notice of the board's action, if any, ~~shall be communicated~~ to the respondent. The proceeding ~~shall be commenced~~begins by filing with the Supreme Court of Florida notice of intent to seek review of a report of referee, specifying those portions of the report of a referee sought to be reviewed. Within 20 days after service of ~~such~~the notice of intent to seek review, the opposing party may file a cross-notice for review specifying any additional portion of the report for which that ~~said~~ party ~~desires to be reviewed~~seeks review. The filing of ~~such~~the notice or cross-notice ~~shall be~~is jurisdictional as to a review to be procured as a matter of right, but the court may, in its discretion, consider a late-filed notice or cross-notice ~~up~~on a showing of good cause.

(2) *Record on Review.* The report and record filed by the referee ~~shall~~ constitute~~s~~ the record on review. If hearings were held at which testimony was heard, but no transcripts ~~thereof~~ were filed in the matter, the party seeking review ~~shall~~must order preparation of all ~~such~~ transcripts, file the transcripts~~original thereof~~ with the court, and serve copies on the opposing party~~,~~ on or before the time of filing of the initial

- 25 -

brief, as provided elsewhere in this rule.  The party seeking review ~~shall be responsible for, and~~<u>must</u> pay ~~directly to~~ the court reporter~~,~~ the cost of <u>transcript</u> preparation ~~of transcripts~~.  Failure to timely file and serve all ~~of such~~ transcripts may be cause ~~for dismissal of~~<u>to dismiss</u> the party's petition for review.

(3)  *Briefs*.  The party first seeking review ~~shall~~<u>must</u> file a brief in support of the notice of intent to seek review within 30 days of the filing of the notice.  The opposing party ~~shall~~<u>must</u> file an answer brief within 20 days after the service of the initial brief of the party seeking review, which ~~answer brief shall~~<u>must</u> also support any cross-notice for review.  The party originally seeking review may file a reply brief within 20 days after the service of the answer brief.  The cross-reply brief, if any, ~~shall~~<u>must</u> be served within 20 days ~~thereafter~~<u>of the reply brief's filing</u>.  Computation of time for filing briefs under this rule ~~shall~~ follow<u>s</u> the applicable Florida Rules of Appellate Procedure.  The form, length, binding, type, and margin requirements of briefs filed under this rule ~~shall~~ follow the requirements of Fla. R. App. P. 9.210.

(4)  *Oral Argument*.  Request for oral argument may be filed in any case ~~wherein~~ a party files a notice of intent to seek review at the time of filing the first brief.  If no request is filed, the case will be disposed of without oral argument unless the court orders otherwise.

(5)  *Burden*.  ~~Upon~~<u>On</u> review, the burden ~~shall be upon~~<u>is on</u> the party seeking review to demonstrate that ~~a~~<u>all or part of the referee</u> report ~~of a referee sought to be reviewed~~ is erroneous, unlawful, or unjustified.

(6)  *Judgment of Supreme Court of Florida.*

(A)  Authority.  After review, the Supreme Court of Florida ~~shall~~<u>will</u> enter an appropriate order or judgment.  If no review is sought of a report of a referee entered under the rules and filed in the court, the findings of fact ~~shall be~~<u>are</u> deemed conclusive<u>,</u> and the <u>referee's recommended</u> disciplinary measure ~~recommended by the referee shall~~<u>will</u> be the

- 26 -

disciplinary measure imposed by the court, unless the court directs the parties to submit briefs or conduct oral argument ~~directed to~~on the suitability of the referee's recommended disciplinary measure ~~recommended by the referee~~. A referee's report that becomes final when no review has been timely filed ~~shall~~will be reported in an order of the Supreme Court of Florida.

(B) Form. The court's judgment ~~of the court shall~~may include~~, where appropriate,~~ judgment in favor of:

(i)-(iii) [No Change]

(7) *Procedures on Motions to Tax Costs.* The court may consider a motion to assess costs if the motion is filed within 10 days of the entry of the court's order or opinion where the referee finds the respondent not guilty at trial and the ~~supreme~~ court, ~~up~~on review, finds the respondent guilty of at least 1 rule violation and does not remand the case to the referee for further proceedings or where the respondent was found guilty at trial and the ~~supreme~~ court, ~~up~~on review, finds the respondent not guilty of any rule violation. The party from whom costs are sought ~~shall have~~has 10 days from the date the motion was filed in which to serve an objection. Failure to timely file a petition for costs or ~~to~~ timely serve an objection, without good cause, ~~shall be considered a waiver of~~waives the request or objection to the costs, and the court may enter an order without further proceedings. If an objection is timely filed, or the court otherwise directs, the motion ~~shall~~will be remanded to the referee. ~~Upon~~On remand, the referee ~~shall~~must file a supplemental report that ~~shall~~ includes a statement of costs incurred and the manner in which the costs should be assessed. Any party may seek review of the supplemental report of referee in the same manner as provided for in this rule for other reports of the referee.

**(d) Precedence of Proceedings.** Notices of intent to seek review in disciplinary proceedings ~~shall~~ take precedence over all other civil causes in the Supreme Court of Florida.

**(e) Extraordinary Writs.**  All applications for extraordinary writs that are concerned with disciplinary proceedings under these rules of discipline ~~shall~~must be made to the Supreme Court of Florida.

**(f) Florida Rules of Appellate Procedure.**  ~~To the extent necessary to implement this rule and if not inconsistent herewith, the~~The Florida Rules of Appellate Procedure ~~shall be~~are applicable to notices of intent to seek review in disciplinary proceedings if consistent with this rule.~~, provided service~~  Service on bar counsel and staff counsel constitutes service on The Florida Bar~~shall be accomplished by service on bar counsel and staff counsel~~.

**(g) Contempt by Respondent.**  Whenever it is alleged that a respondent is in contempt in a disciplinary proceeding, a petition for an order to show cause why the respondent should not be held in contempt and the proceedings on ~~such~~the petition may be filed in and determined by the ~~Supreme Court of Florida~~court or as provided under rule 3-7.11(f).

**(h) Pending Disciplinary Cases.**  If the court orders disbarment or disciplinary revocation ~~is ordered by the court~~, that order may include the dismissal without prejudice of other pending cases against the respondent ~~may be ordered in the court's disbarment or disciplinary revocation order~~.

## Comment

Subdivision (c)(7) of this rule applies to situations ~~which~~that arise when a referee finds a respondent not guilty but the ~~supreme~~ court, on review, finds the respondent guilty and does not remand the case ~~back~~ to the referee for further proceedings.  *See, e.g., The Florida Bar v. Pape*, 918 So. 2d 240 (Fla. 2005).  A similar situation may also occur where a respondent is found guilty at trial, but not guilty by the ~~supreme~~ court on review of the referee's report and recommendation.

## RULE 4-1.5 FEES AND COSTS FOR LEGAL SERVICES

**(a) Illegal, Prohibited, or Clearly Excessive Fees and Costs.**  A lawyer must not enter into an agreement for, charge, or collect an

illegal, prohibited, or clearly excessive fee or cost, or a fee generated by employment that was obtained through advertising or solicitation not in compliance with the Rules Regulating The Florida Bar.  A fee or cost is clearly excessive when:

(1)  after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee or the cost exceeds a reasonable fee or cost for services provided to such a degree as to constitute clear overreaching or an unconscionable demand by the ~~attorney~~lawyer; or

(2)  the fee or cost is sought or secured by the ~~attorney~~lawyer by means of intentional misrepresentation or fraud upon the client, a nonclient party, or any court, as to either entitlement to, or amount of, the fee.

**(b)-(e)**  [No Change]

**(f)  Contingent Fees.**  As to contingent fees:

(1)  A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by subdivision (f)(3) or by law.  A contingent fee agreement must be in writing and must state the method by which the fee is to be determined, including the percentage or percentages that will accrue to the lawyer in the event of settlement, trial, or appeal~~;~~.  The agreement must also state the costs ~~litigation and other expenses~~ to be deducted from the recovery~~;~~ and whether those ~~expenses~~costs are to be deducted before or after the contingent fee is calculated.  On conclusion of a contingent fee matter, the lawyer must provide the client with a written statement describing the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination.  This written statement must include an itemization of costs, fees of each lawyer or law firm participating in the fee, and payments to third parties to be paid from the recovery.

(2)-(4)  [No Change]

**(g)-(i)**  [No Change]

## RULE 4-1.10 IMPUTATION OF CONFLICTS OF INTEREST; GENERAL RULE

**(a)-(e)**  [No Change]

**Comment**

**Definition of "firm"**

There is ordinarily no question that the members of an organization's law department constitute a firm within the meaning of the Rules of Professional Conduct.  However, there can be uncertainty as to the identity of the client.  For example, it may not be clear whether the law department of a corporation represents a subsidiary or an affiliated corporation, as well as the corporation by which the members of the department are directly employed.  A similar question can arise concerning an unincorporated association and its local affiliates.

Similar questions can also arise with respect to lawyers in legal aid.  Lawyers employed in the same unit of a legal service organization constitute a firm, but not necessarily those employed in separate units.  As in the case of independent practitioners, whether the lawyers should be treated as associated with each other can depend on the particular rule that is involved and on the specific facts of the situation.

Where a lawyer has joined a private firm after having represented the government, the situation is governed by rule 4-1.11(a) and (b); where a lawyer represents the government after having served private clients, the situation is governed by rule 4-1.11(c)(1)4-1.11(d).  The individual lawyer involved is bound by the rules generally, including rules 4-1.6, 4-1.7, and 4-1.9.

Different provisions are thus made for movement of a lawyer from 1 private firm to another and for movement of a lawyer between a private firm and the government.  The government is entitled to protection of its client confidences and, therefore, to the protections provided in rules 4-1.6, 4-1.9, and 4-1.11.  However, if

the more extensive disqualification in rule 4-1.10 were applied to former government lawyers, the potential effect on the government would be unduly burdensome.  The government deals with all private citizens and organizations and thus has a much wider circle of adverse legal interests than does any private law firm.  In these circumstances, the government's recruitment of lawyers would be seriously impaired if rule 4-1.10 were applied to the government.  On balance, therefore, the government is better served in the long run by the protections stated in rule 4-1.11.

**Principles of imputed disqualification**

[No Change]

**Lawyers moving between firms**

[No Change]

**Confidentiality**

Preserving confidentiality is a question of access to information.  Access to information, in turn, is essentially a question of fact in particular circumstances, aided by inferences, deductions, or working presumptions that reasonably may be made about the way in which lawyers work together.  A lawyer may have general access to files of all clients of a law firm and may regularly participate in discussions of their affairs; it should be inferred that such a lawyer in fact is privy to all information about all the firm's clients.  In contrast, another lawyer may have access to the files of only a limited number of clients and participate in discussion of the affairs of no other clients; in the absence of information to the contrary, it should be inferred that such a lawyer in fact is privy to information about the clients actually served but not information about other clients.

Application of subdivisions (b) and (c) depends on a situation's particular facts.  In any inquiry, the burden of proof should rest ~~upon~~on the firm whose disqualification is sought.

Subdivisions (b) and (c) operate to disqualify the firm only when the lawyer involved has actual knowledge of relevant information protected by rules 4-1.6 and 4-1.9(b) and (c).  Thus, if a lawyer while with 1 firm acquired no knowledge or information relating to a particular client of the firm and that lawyer later joined another firm, neither the lawyer individually nor the second firm is disqualified from representing another client in the same or a related matter even though the interests of the 2 clients conflict.

Independent of the question of disqualification of a firm, a lawyer changing professional association has a continuing duty to preserve confidentiality of information about a client formerly represented. See rules 4-1.6 and 4-1.9.

**Consent to conflict**

[No Change]

**Imputation of conflicts in rule 4-1.8**

[No Change]

### RULE 4-1.14 CLIENT ~~UNDER A DISABILITY~~<u>WITH DIMINISHED CAPACITY</u>

(a)  **Maintenance of Normal Relationship.**  When a client's ~~ability~~<u>capacity</u> to make adequately considered decisions in connection with the representation is ~~impaired~~<u>diminished</u>, whether because of minority, mental ~~disability~~<u>impairment</u>, or for some other reason, the lawyer ~~shall~~<u>must</u>~~, as far as reasonably possible,~~ maintain a normal client-lawyer relationship with the client <u>as much as reasonably possible</u>.

(b)  **Appointment of Guardian.**  ~~A lawyer may seek the appointment of a guardian or take other protective action with respect to a client only when the lawyer reasonably believes that the client cannot adequately act in the client's own interest.~~**<u>Protective Action.</u>**  <u>A lawyer is not required to seek a determination of incapacity or the appointment of a guardian or take other protective action with respect to a client.  However, when the lawyer</u>

- 32 -

reasonably believes that the client has diminished capacity, is at risk of substantial physical, financial, or other harm unless action is taken and cannot adequately act in the client's own interest, the lawyer may take reasonably necessary protective action, such as, consulting with individuals or entities that have the ability to act to protect the client and, in appropriate cases, seek the appointment of a guardian ad litem or guardian.  A lawyer must make reasonable efforts to exhaust all other available remedies to protect the client before seeking removal of any of the client's rights or the appointment of a guardian.

**(c)  Confidentiality.**  Information relating to the representation of a client with diminished capacity is protected by the rule on confidentiality of information.  When taking protective action under this rule, the lawyer is impliedly authorized under the rule on confidentiality of information to reveal information about the client, but only to the extent reasonably necessary to protect the client's interests.

## Comment

The normal client-lawyer relationship is based on the assumption that the client, when properly advised and assisted, is capable of making decisions about important matters.  When the client is a minor or ~~suffers from a mental disorder or disability~~has diminished mental capacity, however, maintaining the ordinary client-lawyer relationship may not be possible in all respects.  In particular, an incapacitated person may have no power to make legally binding decisions.  Nevertheless, a client ~~lacking legal competence~~with diminished capacity often has the ability to understand, deliberate ~~upon~~, and reach conclusions about matters affecting the client's own well-being.  ~~Furthermore, to an increasing extent the law recognizes intermediate degrees of competence.~~  For example, children as young as 5 or 6 years of age, and certainly those of 10 or 12, are regarded as having opinions that are entitled to weight in legal proceedings concerning their custody.  ~~So also, it is recognized that some~~Some persons of advanced age ~~can be quite~~are capable of handling routine financial matters while needing special legal protection concerning major transactions.

- 33 -

~~The fact that~~That a client ~~suffers a disability~~has diminished capacity does not diminish the lawyer's obligation to treat the client with attention and respect.  ~~If the person has no guardian or legal representative, the lawyer often must act as de facto guardian.~~ Even if the person ~~does have~~has a legal representative, the lawyer should, as far as possible, accord the represented person the status of client, particularly in maintaining communication.

The client may wish to have family members or other persons participate in discussions with the lawyer.  When necessary to assist in the representation, the presence of these persons furthers the rendition of legal services to the client and does not waive the attorney-client privilege.  Nevertheless, the lawyer must keep the client's interests foremost and, except for protective action authorized under subdivision (b), must look to the client, and not family members, to make decisions on the client's behalf.  A lawyer should be mindful of protecting the privilege when taking protective action.

If a legal representative has already been appointed for the client, the lawyer should ordinarily look to the representative for decisions on behalf of the client.  ~~If a legal representative has not been appointed, the lawyer should see to such an appointment where it would serve the client's best interests.  Thus, if a disabled client has substantial property that should be sold for the client's benefit, effective completion of the transaction ordinarily requires appointment of a legal representative.  In many circumstances, however, appointment of a legal representative may be expensive or traumatic for the client.  Evaluation of these considerations is a matter of professional judgment on the lawyer's part.~~In matters involving a minor, whether the lawyer should look to the parents as natural guardians may depend on the type of proceeding or matter in which the lawyer is representing the minor.  If the lawyer represents the guardian, as distinct from the ward, and is aware ~~that~~ the guardian is acting adversely to the ward's interest, the lawyer may have an obligation to prevent or rectify the guardian's misconduct.  *See* rule 4-1.2(d); *Saadeh v. Connors*, 166 So. 3d 959 (Fla. 4th DCA 2015); Fla. AGO 96-94, 1996 WL 680981.

**Taking protective action**

    If a lawyer reasonably believes that a client is at risk of substantial physical, financial, or other harm unless action is taken, and that a normal client-lawyer relationship cannot be maintained as provided in subdivision (a) because the client lacks sufficient capacity to communicate or make adequately considered decisions in connection with the representation, then subdivision (b) permits the lawyer to take protective measures deemed necessary.  These measures could include: consulting with family members, using a reconsideration period to permit clarification or improvement of circumstances, using voluntary surrogate decision-making tools such as durable powers of attorney or consulting with support groups, professional services, adult-protective agencies, or other individuals or entities that have the ability to protect the client.  In taking any protective action, the lawyer should be guided by such factors as the wishes and values of the client to the extent known, the client's best interests, and the goals of intruding into the client's decision-making autonomy to the least extent feasible, maximizing client capacities, and respecting the client's family and social connections.  Which factors the lawyer chooses to be guided by will depend on the nature of the protective action to be taken, some issues being governed by the client's substituted judgment and others by the client's best interests.

    Whether the client's capacity has diminished may be shown by such factors as: the client's ability to articulate reasoning leading to a decision; variability of state of mind and ability to appreciate consequences of a decision; the substantive fairness of a decision; and the consistency of a decision with the known long-term commitments and values of the client.  In appropriate circumstances, the lawyer may seek guidance from an appropriate diagnostician.

    If a legal representative has not been appointed, the lawyer should consider whether appointment of a guardian ad litem or guardian is necessary to protect the client's interests.  Thus, if a client with diminished capacity has substantial property that should be sold for the client's benefit, effective completion of the transaction may require appointment of a legal representative.  In

addition, rules of procedure in litigation sometimes provide that minors or persons with diminished capacity must be represented by a guardian or next friend.  In many circumstances, however, appointment of a legal representative may be more expensive or traumatic for the client than circumstances require.  Evaluation of circumstances is a matter entrusted to the lawyer's professional judgment.  In considering alternatives, the lawyer should be aware of any law that requires the lawyer to advocate the least restrictive action on behalf of the client.

**Disclosure of client's condition**

~~Rules of procedure in litigation generally provide that minors or persons suffering mental disability shall be represented by a guardian or next friend if they do not have a general guardian.  However, disclosure~~Disclosure of the client's ~~disability can~~diminished capacity could adversely affect the client's interests.  ~~The lawyer may seek guidance from an appropriate diagnostician.~~  For example, raising the question of diminished capacity could, in some circumstances, lead to proceedings for involuntary commitment.  Information relating to the representation is protected by rule 4-1.6.  Therefore, unless authorized to do so, the lawyer may not disclose confidential information.  When taking protective action under subdivision (b), the lawyer is impliedly authorized to make the necessary disclosures.  Nevertheless, given the risks of disclosure, subdivision (c) limits what the lawyer may disclose in consulting with other individuals or entities or seeking the appointment of a legal representative.  At the very least, the lawyer should determine whether it is likely the person or entity consulted with will act adversely to the client's interests before discussing matters related to the client.  The lawyer's position in these cases is an unavoidably difficult one.

**Emergency legal assistance**

A lawyer may, but is not required to, take legal action to protect a person with diminished capacity who is threatened with imminent and irreparable harm to the person's health, safety, or financial interests, even though the person is unable to establish a client-lawyer relationship or make or express considered judgments about

the matter when the person or another acting in good faith on that person's behalf has consulted with the lawyer.  Even in an emergency, however, the lawyer should not act unless the lawyer reasonably believes the person has no alternative available.  The lawyer should take legal action on behalf of the person only to the extent reasonably necessary to maintain the status quo or otherwise avoid imminent and irreparable harm.  A lawyer who undertakes to represent a person in an exigent situation has the same duties under these rules as the lawyer would with respect to a client.

A lawyer who acts on behalf of a person with diminished capacity in an emergency should keep the confidences of the person as if dealing with a client, disclosing them only to the extent necessary to accomplish the intended protective action.  The lawyer may disclose to any tribunal involved and to any other counsel involved the nature of his or her relationship with the person while maintaining the person's confidential information.

## 4-5.8  PROCEDURES FOR LAWYERS LEAVING LAW FIRMS AND DISSOLUTION OF LAW FIRMS

**(a)-(e)**  [No Change]

## Comment

The current rule of law regarding ownership of client files is discussed in *Donahue v. Vaughn*, 721 So. 2d 356 (Fla. 5th DCA 1998), ~~and~~ *Dowda & Fields, P.A. v. Cobb*, 452 So. 2d 1140 (Fla. 5th DCA 1984), and *Woodson v. Durocher*, 588 So. 2d 644 (Fla. 5th DCA 1991).  A lawyer leaving a law firm~~, when the law firm remains available to continue legal representation, has no right nor expectation to take client files without an agreement with the law firm to do so~~ should consult with the law firm regarding disposition of client files.  Ownership of client files may be the subject of contract law and of the employment, partnership, or shareholder agreement between the lawyer and the law firm.

While clients have the right to choose counsel, that choice may implicate obligations such as a requirement to pay for legal services previously rendered and costs expended in connection with the

representation as well as a reasonable fee for copying the client's file.

Whether individual members have any individual legal obligations to a client is a matter of contract law, tort law, or court rules that is outside the scope of rules governing lawyer conduct. Generally, individual lawyers have ~~such~~these obligations only if provided for in the contract for representation. Nothing in this rule or in the contract for representation may alter the ethical obligations that individual lawyers have to clients as provided elsewhere in these rules.

In most instances a lawyer leaving a law firm and the law firm should engage in bona fide, good faith negotiations and craft a joint communication providing adequate information to the client so that the client may make a fully informed decision concerning future representation. In those instances in which bona fide negotiations are unsuccessful, unilateral communication may be made by the departing lawyer or the law firm. In those circumstances, great care should be taken to meet the obligation of adequate communication and for this reason the specific requirements of subdivisions (d)(1) and (3) are provided.

Lawyers and firms should engage in bona fide, good faith negotiations within a reasonable period of time following their knowledge of either the anticipated change in firm composition or, if the anticipated change is unknown, within a reasonable period of time after the change in firm composition. The actual notification to clients should also occur within a reasonable period of time. What is reasonable will depend on the circumstances, including the nature of the matters in which the lawyer represented the clients and whether the affected clients have deadlines that need to be met within a short period of time.

For purposes of this rule, clients who should be notified of the change in firm composition include current clients for whom the departing lawyer has provided significant legal services with direct client contact. Clients need not be notified of the departure of a lawyer with whom the client has had no direct contact. Clients whose files are closed need not be notified unless the former client

contacts the firm, at which point the firm should notify the former client of the departure of any lawyer who performed significant legal services for that former client and had direct contact with that former client.

Although contact by telephone is not prohibited under this rule, proof of compliance with the requirements of this rule may be difficult unless the notification is in writing.

In order to comply with the requirements of this rule, both departing lawyers and the law firm should be given access to the names and contact information of all clients for whom the departing lawyer has provided significant legal services and with whom the lawyer has had direct contact.

If neither the departing lawyer nor the law firm intends to continue representation of the affected clients, they may either agree on a joint letter providing that information to those clients, or may separately notify the affected clients after bona fide, good faith negotiations have failed. Any obligation to give the client reasonable notice, protect the client's interests on withdrawal, and seek permission of a court to withdraw may apply to both the departing lawyer and lawyers remaining in the firm.

Most law firms have some written instrument creating the law firm and specifying procedures to be employed upon dissolution of the firm. However, when such an instrument does not exist or does not adequately provide for procedures in the event of dissolution, the provisions of this rule are provided so that dissolution of the law firm does not disproportionately affect client rights.

As in instances of a lawyer departing a law firm, lawyers involved in the dissolution of law firms have a continuing obligation to provide adequate information to a client so that the client may make informed decisions concerning future representation.

The Florida Bar has sample forms for notice to clients and sample partnership and other contracts that are available to members. The forms may be accessed on the bar's website, *www.floridabar.org*, or by calling The Florida Bar headquarters in Tallahassee.

Lawyers involved in either a change in law firm composition or law firm dissolution may have duties to notify the court if the representation is in litigation.  If the remaining law firm will continue the representation of the client, no notification of the change in firm composition to the court may be required, but such a notification may be advisable.  If the departing lawyer will take over representation of the client, a motion for substitution of counsel or a motion by the firm to withdraw from the representation may be appropriate.  If the departing lawyer and the law firm have made the appropriate request for the client to select either the departing lawyer or the law firm to continue the representation, but the client has not yet responded, the law firm should consider notifying the court of the change in firm composition, although under ordinary circumstances, absent an agreement to the contrary, the firm will continue the representation in the interim.  If the departing lawyer and the law firm have agreed regarding who will continue handling the client's matters then, absent disagreement by the client, the agreement normally will determine whether the departing lawyer or the law firm will continue the representation.

### RULE 4-6.1 PRO BONO PUBLIC SERVICE

**(a)-(c)**  [No Change]

**(d)  Reporting Requirement.**  Each member of the bar ~~shall~~must annually report whether the member has satisfied the member's professional responsibility to provide pro bono legal services to the poor~~.  Each member shall report this information~~ through ~~a simplified reporting form that is made a part of~~ the member's annual membership fees statement as developed by The Florida Bar.  At minimum, the statement must include the number of hours of pro bono legal services provided and the dollar amount of contributions to pro bono legal services organizations. ~~The form will contain the following categories from which each member will be allowed to choose in reporting whether the member has provided pro bono legal services to the poor:~~

~~(1)  I have personally provided _____ hours of pro bono legal services;~~

- 40 -

(2)  I have provided pro bono legal services collectively by: (indicate type of case and manner in which service was provided);

(3)  I have contributed $_____ to:  (indicate organization to which funds were provided);

(4)  I have provided legal services to the poor in the following special manner:  (indicate manner in which services were provided); or

(5)  I have been unable to provide pro bono legal services to the poor this year; or

(6)  I am deferred from the provision of pro bono legal services to the poor because I am:  (indicate whether lawyer is:  a member of the judiciary or judicial staff; a government lawyer prohibited by statute, rule, or regulation from providing services; retired, or inactive).

The failure to report this information ~~shall~~ constitutes a disciplinary offense under these rules.

**(e)  Credit Toward Professional Responsibility in Future Years.**  In the event that more than 20 hours of pro bono legal service to the poor are provided and reported in any 1 year, the hours in excess of 20 hours may be carried forward and reported ~~as such~~ for up to 2 succeeding years for the purpose of determining whether a lawyer has fulfilled the professional responsibility to provide pro bono legal service to the poor in those succeeding years.

**(f)**  [No Change]

## Comment

Pro bono legal service to the poor is an integral and particular part of a lawyer's pro bono public service responsibility.  As our society has become one in which rights and responsibilities are increasingly defined in legal terms, access to legal services has become of critical importance.  This is true for all people, be they rich, poor, or of moderate means.  However, because the legal

problems of the poor often involve areas of basic need, their inability to obtain legal services can have dire consequences.  The vast unmet legal needs of the poor in Florida have been recognized by the Supreme Court of Florida and by several studies undertaken in Florida over the past ~~two~~2 decades.  The Supreme Court of Florida has further recognized the necessity of finding a solution to the problem of providing the poor greater access to legal service and the unique role of lawyers in our adversarial system of representing and defending persons against the actions and conduct of governmental entities, individuals, and nongovernmental entities.  As an officer of the court, each member of The Florida Bar in good standing has a professional responsibility to provide pro bono legal service to the poor.  Certain lawyers, however, are prohibited from performing legal services by constitutional, statutory, rule, or other regulatory prohibitions.  Consequently, members of the judiciary and their staffs, government lawyers who are prohibited from performing legal services by constitutional, statutory, rule, or regulatory prohibitions, members of the bar who are retired, inactive, or suspended, or who have been placed on the inactive list for incapacity not related to discipline are deferred from participation in this program.

In discharging the professional responsibility to provide pro bono legal service to the poor, each lawyer should furnish a minimum of ~~twenty~~20 hours of pro bono legal service to the poor annually or contribute $350 to a legal aid organization.  "Pro bono legal service" means legal service rendered without charge or expectation of a fee for the lawyer at the time the service commences.  Legal services written off as bad debts do not qualify as pro bono service.  Most pro bono service should involve civil proceedings given that government must provide indigent representation in most criminal matters.  Pro bono legal service to the poor is to be provided not only to those persons whose household incomes are below the federal poverty standard but also to those persons frequently referred to as the "working poor."  Lawyers providing pro bono legal service on their own need not undertake an investigation to determine client eligibility.  Rather, a good faith determination by the lawyer of client eligibility is sufficient.  Pro bono legal service to the poor need not be provided only through legal services to

individuals; it can also be provided through legal services to charitable, religious, or educational organizations whose overall mission and activities are designed predominately to address the needs of the poor. For example, legal service to organizations such as a church, civic, or community service organizations relating to a project seeking to address the problems of the poor would qualify.

While the personal involvement of each lawyer in the provision of pro bono legal service to the poor is generally preferable, ~~such~~ personal involvement may not always be possible or produce the ultimate desired result, that is, a significant maximum increase in the quantity and quality of legal service provided to the poor. The annual contribution alternative recognizes a lawyer's professional responsibility to provide financial assistance to increase and improve the delivery of legal service to the poor when a lawyer cannot or decides not to provide legal service to the poor through the contribution of time. Also, there is no prohibition against a lawyer contributing a combination of hours and financial support. The limited provision allowing for collective satisfaction of the 20-hour standard recognizes the importance of encouraging law firms to undertake the pro bono legal representation of the poor in substantial, complex matters requiring significant expenditures of law firm resources and time and costs, such as class actions and post-conviction death penalty appeal cases, and through the establishment of full-time community or public service staffs. When a law firm uses collective satisfaction, the total hours of legal services provided in such substantial, complex matters or through a full-time community or public service staff should be credited among the firm's lawyers in a fair and reasonable manner as determined by the firm.

The reporting requirement is designed to provide a sound basis for evaluating the results achieved by this rule, reveal the strengths and weaknesses of the pro bono plan, and to remind lawyers of their professional responsibility under this rule. The fourth alternative of the reporting requirements allows members to indicate that they have fulfilled their service in some manner not specifically envisioned by the plan.

The 20-hour standard for the provision of pro bono legal service to the poor is a minimum.  Additional hours of service are to be encouraged.  Many lawyers will, as they have before the adoption of this rule, contribute many more hours than the minimum.  To ensure that a lawyer receives credit for the time required to handle a particularly involved matter, this rule provides that the lawyer may carry forward, over the next 2 successive years, any time expended in excess of 20 hours in any 1 year.

## RULE 4-7.13 DECEPTIVE AND INHERENTLY MISLEADING ADVERTISEMENTS

A lawyer may not engage in deceptive or inherently misleading advertising.

**(a)** [No Change]

**(b)  Examples of Deceptive and Inherently Misleading Advertisements.**  Deceptive or inherently misleading advertisements include, but are not limited to, advertisements that contain:

(1)  statements or information that ~~can reasonably be interpreted by~~ a prospective client can reasonably interpret as a prediction or guaranty of success or specific results;

(2)  [No Change]

(3)  comparisons of lawyers or statements, words, or phrases that characterize a lawyer's or law firm's skills, experience, reputation, or record, unless ~~such~~the characterization is objectively verifiable;

(4)-(5)  [No Change]

(6)  a dramatization of an actual or fictitious event, unless the dramatization contains the following prominently displayed notice: "DRAMATIZATION. NOT AN ACTUAL EVENT~~.~~";

(7)  ~~When an advertisement includes~~ an actor purporting to be engaged in a particular profession or occupation, unless the

advertisement ~~must~~ includes the following prominently displayed notice: "ACTOR. NOT <u>AN</u> ACTUAL [ . . . . ]";

(~~7~~<u>8</u>)  statements, trade names, telephone numbers, Internet addresses, images, sounds, videos<u>,</u> or dramatizations that state or imply that the lawyer will engage in conduct or tactics that are prohibited by the Rules of Professional Conduct or any law or court rule;

(~~8~~<u>9</u>)  a testimonial:

    (A)-(F)  [No Change]

(~~9~~<u>10</u>)  a statement or implication that The Florida Bar has approved an advertisement or a lawyer, except a statement that the lawyer is licensed to practice in Florida or has been certified pursuant to chapter 6, Rules Regulating ~~the~~<u>The</u> Florida Bar;~~ or~~

(~~10~~<u>11</u>)  a judicial, executive, or legislative branch title, unless accompanied by clear modifiers and placed ~~subsequent to~~<u>after</u> the person's name in reference to a current, former<u>,</u> or retired judicial, executive, or legislative branch official currently engaged in the practice of law~~.  For example, a former judge may not state "Judge Doe (retired)" or "Judge Doe, former circuit judge." She may state "Jane Doe, Florida Bar member, former circuit judge" or "Jane Doe, retired circuit judge...."~~<u>; or</u>

<u>(12)  a statement or implication that another lawyer or law firm is part of, is associated with, or affiliated with the advertising law firm when that is not the case, including contact or other information presented in a way that misleads a person searching for a particular lawyer or law firm, or for information regarding a particular lawyer or law firm, to unknowingly contact a different lawyer or law firm.</u>

## Comment
### Material ~~Omissions~~<u>omissions</u>

[No Change]

### Implied ~~Existence~~<u>existence</u> of ~~Nonexistent Fact~~<u>nonexistent fact</u>

[No Change]

### Predictions of ~~Success~~<u>success</u>

[No Change]

### Past ~~Results~~<u>results</u>

The prohibitions in subdivisions (b)(1) and (b)(2) of this rule preclude advertisements about results obtained on behalf of a client, such as the amount of a damage award or the lawyer's record in obtaining favorable verdicts, if the results are not objectively verifiable or are misleading, either alone or in the context in which they are used. For example, an advertised result that is atypical of persons under similar circumstances is likely to be misleading. A result that omits pertinent information, such as failing to disclose that a specific judgment was uncontested or obtained by default, or failing to disclose that the judgment is far short of the client's actual damages, is also misleading. The information may create the unjustified expectation that similar results can be obtained for others without reference to the specific factual and legal circumstances. An example of a past result that can be objectively verified is that a lawyer has obtained acquittals in all charges in 4 criminal defense cases. On the other hand, general statements such as, "I have successfully represented clients," or "I have won numerous appellate cases," may or may not be sufficiently objectively verifiable. For example, a lawyer may interpret the words "successful" or "won" in a manner different from the average prospective client. In a criminal law context, the lawyer may interpret the word "successful" to mean a conviction to a lesser charge or a lower sentence than recommended by the prosecutor, while the average prospective client likely would interpret the words "successful" or "won" to mean an acquittal.

Rule 4-1.6(a), Rules Regulating ~~the~~The Florida Bar, prohibits a lawyer from voluntarily disclosing any information regarding a representation without a client's informed consent, unless one of the exceptions to rule 4-1.6 applies.  A lawyer who wishes to advertise information about past results must have the affected client's informed consent.  The fact that some or all of the information a lawyer may wish to advertise is in the public record does not obviate the need for the client's informed consent.

**Comparisons**

[No Change]

**Characterization of ~~Skills, Experience, Reputation or Record~~skills, experience, reputation, or record**

[No Change]

**Areas of ~~Practice~~practice**

[No Change]

**Dramatizations**

[No Change]

**Implying ~~Lawyer Will Violate Rules of Conduct or Law~~lawyer will violate rules of conduct or law**

[No Change]

**Testimonials**

[No Change]

**Florida ~~Bar Approval of Ad or Lawyer~~bar approval of ad or lawyer**

An advertisement may not state or imply that either the advertisement or the lawyer has been approved by The Florida Bar.  Such a statement or implication implies that The Florida Bar endorses a particular lawyer.  Statements prohibited by this provision include, "This advertisement was approved by The Florida

Bar." A lawyer referral service also may not state that it is a "Florida Bar approved lawyer referral service," unless the service is a not-for-profit lawyer referral service approved under chapter 8 of the Rules Regulating ~~the~~The Florida Bar. A qualifying provider also may not state that it is a "Florida Bar approved qualifying provider" or that its advertising is approved by The Florida Bar.

**Judicial, ~~Executive, and Legislative Titles~~executive, and legislative titles**

This rule prohibits use of a judicial, executive, or legislative branch title, unless accompanied by clear modifiers and placed ~~subsequent to~~after the person's name, when used to refer to a current or former officer of the judicial, executive, or legislative branch. Use of a title before a name is inherently misleading in that it implies that the current or former officer has improper influence. Thus, the titles Senator Doe, Representative Smith, Judge Doe (Retired), Former Justice Doe, Retired Judge Smith, Justice Smith (Retired), Governor (Retired) Doe, Former Senator Smith, and other similar titles used as titles in conjunction with the lawyer's name are prohibited by this rule. This includes, but is not limited to, use of the title in advertisements and written communications, computer-accessed communications, letterhead, and business cards.

However, an accurate representation of one's judicial, executive, or legislative experience is permitted if the reference is ~~subsequent to~~after the lawyer's name and is clearly modified by terms such as "former" or "retired." For example, a former judge may state "Jane Doe, Florida Bar member, former circuit judge" or "Jane Doe, retired circuit judge."

As another example, a former state representative may not include "Representative Smith (former)" or "Representative Smith, retired" in an advertisement, letterhead, or business card. However, a former representative may state, "John Smith, Florida Bar member, former state representative."

Further, an accurate representation of one's judicial, executive, or legislative experience is permitted in reference to background

- 48 -

and experience in biographies, curriculum vitae, and resumes if accompanied by clear modifiers and placed ~~subsequent to~~after the person's name.  For example, the statement "John Jones was governor of the State of Florida from [ . . . years of service . . . ]" would be permissible.

Also, the rule governs ~~attorney~~lawyer advertising.  It does not apply to pleadings filed in a court.  A practicing ~~attorney~~lawyer who is a former or retired judge may not use the title in any form in a court pleading.  A former or retired judge who uses that former or retired judge's previous title of "Judge" in a pleading could be sanctioned.

## Implication of association or affiliation with another lawyer or law firm

This rule prohibits any statement or implication that a lawyer or law firm is affiliated or associated with the advertising lawyer or law firm when that is not the case.  Lawyers may not state or imply another lawyer is part of the advertising firm if the statement or implication is untrue.  For example, when a lawyer leaves a law firm, the firm must remove the lawyer's name from the firm's letterhead, website, advertisements, and other communications about the law firm.  An example of impermissible advertising would be including the name of a lawyer or law firm that is not part of the advertising law firm in an Internet advertisement or sponsored link that is displayed when the non-affiliated lawyer or law firm's name is used as a search term when the advertisement does not clearly indicate that the non-affiliated lawyer or law firm is not part of the advertising law firm.  Another example of impermissible conduct is use of another lawyer or law firm name as an Internet search term that triggers the display of an advertisement that does not clearly indicate that the advertisement is for a lawyer or law firm that is not the lawyer or law firm used as the search term.  The triggered advertisement would not be misleading if the first text displayed is the name of the advertising lawyer or law firm and, if the displayed law firm name is a trade name that does not contain the name of a current or deceased partner, the name of the lawyer responsible for the advertisement is also displayed as the first text.

# RULE 4-7.18 DIRECT CONTACT WITH PROSPECTIVE CLIENTS

**(a)  Solicitation.**  Except as provided in subdivision (b) of this rule, a lawyer may not:

(1)  solicit in person, or permit employees or agents of the lawyer to solicit in person on the lawyer's behalf, professional employment from a prospective client with whom the lawyer has no family or prior professional relationship when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain. The term "solicit" includes contact in person, by telephone, by electronic means that include real-time communication face-to-face such as video telephone or video conference, or by other communication directed to a specific recipient that does not meet the requirements of subdivision (b) of this rule and rules 4-7.11 through 4-7.17 of these rules~~.~~; and

(2)  [No Change]

**(b)  Written Communication.**

(1)  [No Change]

(2)  Written communications to prospective clients for the purpose of obtaining professional employment that are not prohibited by subdivision (b)(1) are subject to the following requirements:

(A)  ~~Such~~These communications are subject to the requirements of 4-7.11 through 4-7.17 of these rules.

(B)-(I)  [No Change]

(3)  [No Change]

## Comment

### Permissible contact

A lawyer may initiate the routine mutual exchange of contact information with prospective clients who are attending the same business or professional conference or meeting or business-related social gathering if the lawyer initiates no further discussion of a

specific legal matter.  Similarly, a lawyer may initiate the exchange of contact information and profiles via a specific social media platform that is established for the purpose of businesses and professionals exchanging this type of information if the lawyer initiates no discussion of specific legal matters.  If a prospective client then initiates discussion of a specific legal matter, the lawyer should decline to discuss the matter at the initial contact and defer further discussion to a more appropriate location when the discussion would endanger a prospective client's confidentiality.  Lawyers should not interpret the above to allow a lawyer who knows a person has a specific legal problem to go to a specific conference or meeting where that prospective client will be in attendance in order to initiate the exchange of contact information.  An accident scene, a hospital room of an injured person, or a doctor's office are not business or professional conferences or meetings within the meaning of the discussion above.

**Prior ~~Professional Relationship~~professional relationship**

[No Change]

**Disclosing ~~Where the Lawyer Obtained Information~~where the lawyer obtained information**

In addition, the lawyer or law firm should reveal the source of information used to determine that the recipient has a potential legal problem.  Disclosure of the information source will help the recipient to understand the extent of knowledge the lawyer or law firm has regarding the recipient's particular situation and will avoid misleading the recipient into believing that the lawyer has particularized knowledge about the recipient's matter if the lawyer does not.  The lawyer or law firm must disclose sufficient information or explanation to allow the recipient to locate the information that prompted the communication from the lawyer.

Alternatively, the direct mail advertisement would comply with this rule if the advertisement discloses how much information the lawyer has about the matter.

For example, a direct mail advertisement for criminal defense matters would comply if it stated that the lawyer's only knowledge about the prospective client's matter is the client's name, contact information, date of arrest, and charge. In the context of securities arbitration, a direct mail advertisement would comply with this requirement by stating, if true, that the lawyer obtained information from a list of investors, and the only information on that list is the prospective client's name, address, and the fact that the prospective client invested in a specific company.

**Group or ~~Prepaid Legal Services Plans~~prepaid legal service plans**

This rule would not prohibit a lawyer from contacting representatives of organizations or groups that may be interested in establishing a group or prepaid legal plan for its members, insureds, beneficiaries, or other third parties for the purpose of informing such entities of the availability of, and details concerning, the plan or arrangement that the lawyer or the lawyer's law firm is willing to offer. This form of communication is not directed to a specific prospective client known to need legal services related to a particular matter. Rather, it is usually addressed to an individual acting in a fiduciary capacity seeking a supplier of legal services for others who may, if they choose, become clients of the lawyer. Under these circumstances, the activity that the lawyer undertakes in communicating with ~~such~~these representatives and the type of information transmitted to the individual are functionally similar to and serve the same purpose as advertising permitted under other rules in this subchapter.

### RULE 5-1.2 TRUST ACCOUNTING RECORDS AND PROCEDURES

**(a) Applicability.** The provisions of these rules apply to all trust funds received or disbursed by members of The Florida Bar in the course of their professional practice of law as members of The Florida Bar except special trust funds received or disbursed by a lawyer as guardian, personal representative, receiver, or in a similar capacity, such as trustee under a specific trust document, where the trust funds are maintained in a segregated special trust account and not the general trust account and where this special trust

position has been created, approved, or sanctioned by law or an order of a court that has authority or duty to issue orders pertaining to maintenance of ~~such~~that special trust account.  These rules apply to matters in which a choice of laws analysis indicates that ~~such~~the matters are governed by the laws of Florida.

As set forth in this rule, "lawyer" denotes a person who is a member of The Florida Bar or otherwise authorized to practice in any court of the state of Florida.  "Law firm" denotes a lawyer or lawyers in a private firm who handle client trust funds.

**(b)  Minimum Trust Accounting Records.**  Records may be maintained in their original format or stored in digital media, as long as the copies include all data contained in the original documents and may be produced when required.  The following are the minimum trust accounting records that must be maintained:

(1)-(4)  [No Change]

(5)  original or clearly legible digital copies of all records regarding all wire transfers into or out of the trust account, which, at a minimum, must include the receiving and sending financial institutions' ABA routing numbers and names, and the receiving and sending account holder's name, address, and account number.  If the receiving financial institution processes through a correspondent or intermediary bank, then the records must include the ABA routing number and name for the intermediary bank.  The wire transfer information must also include the name of the client or matter for which the funds were transferred or received, and the purpose of the wire transfer, (e.g., "payment on invoice 1234" or "John Doe closing").

(6)  a separate cash receipts and disbursements journal, including columns for receipts, disbursements, transfers, and the account balance, and containing at least:

(A)-(D)  [No Change]

(7)  a separate file or ledger with an individual card or page for each client or matter, showing all individual receipts,

disbursements, or transfers and any unexpended balance~~,~~ and containing:

       (A)-(D)  [No Change]

   (8)  [No Change]

**(c)  Responsibility of Lawyers for Firm Trust Accounts and Reporting.**

   (1)  Every law firm with more than 1 lawyer must have a written plan in place for supervision and compliance with this rule for each of the firm's trust account(s), which ~~plan~~ must be disseminated to each lawyer in the firm.  The written plan must include the ~~name(s)~~name of ~~the signatories~~each signatory for the law firm's trust accounts, the ~~name(s)~~name of ~~the lawyer(s)~~each lawyer who ~~are~~is responsible for reconciliation of the law firm's trust account(s) monthly and annually, and the ~~name(s)~~name of ~~the lawyer(s)~~each lawyer who ~~are~~is responsible for answering any questions that lawyers in the firm may have about the firm's trust account(s).  This written plan must be updated and re-issued to each lawyer in the firm whenever there are material changes to the plan, such as a change in the trust account signatories ~~and/or~~or lawyer(s) responsible for reconciliation of the firm's trust account(s).

   (2)  Every lawyer is responsible for that lawyer's own actions regarding trust account funds subject to the requirements of chapter 4 of these rules.  Any lawyer who has actual knowledge that the firm's trust account(s) or trust accounting procedures are not in compliance with chapter 5 may report the noncompliance to the managing partner or shareholder of the lawyer's firm.  If the noncompliance is not corrected within a reasonable time, the lawyer must report the noncompliance to staff counsel for the bar if required to do so ~~pursuant to~~under the reporting requirements of chapter 4.

**(d)  Minimum Trust Accounting Procedures.**  The minimum trust accounting procedures that must be followed by all members of The Florida Bar (when a choice of laws analysis indicates that the

laws of Florida apply) who receive or disburse trust money or property are as follows:

(1)-(4)  [No Change]

(5)  The lawyer must file with The Florida Bar, between June 1 and August 15 of each year, a trust accounting certificate showing compliance with these rules on a form approved by the board of governors.  If the lawyer fails to file the trust accounting certificate, the lawyer will be deemed a delinquent member and ineligible to practice law.  The Florida Bar will send written notice to the last official bar address of each member who has not completed and filed the trust accounting certificate with The Florida Bar by August 15.  Written notice may be by registered or certified mail, or by return receipt electronic mail.  The member is considered a delinquent member on failure to file the trust accounting certificate with The Florida Bar by September 30.

**(e)  Electronic Wire Transfers.**  Authorized electronic transfers from a lawyer or law firm's trust account are limited to:

(1)-(2)  [No Change]

(3)  money transferred to the lawyer for fees ~~which~~that are earned in connection with the representation and ~~which~~that are not in dispute; or

(4)  [No Change]

**(f)  Record Retention.**  A lawyer or law firm that receives and disburses client or third-party funds or property must maintain the records required by this chapter for 6 years ~~subsequent to~~after the final conclusion of each representation in which the trust funds or property were received.

(1)  On dissolution of a law firm or ~~of~~ any legal professional corporation, the partners ~~shall~~must make reasonable arrangements for the maintenance and retention of client trust account records specified in this rule.

(2)  On the sale of a law practice, the seller must make reasonable arrangements for the maintenance and retention of trust account records specified in this rule consistent with other requirements regarding the sale of a law firm set forth in ~~Chapter~~chapter 4 of these rules.

**(g)**  [No Change]

**(h)  Cost of Audit.**  Audits conducted in any of the circumstances enumerated in this rule will be at the cost of the lawyer audited only when the audit reveals that the lawyer was not in substantial compliance with the trust accounting requirements. It will be the obligation of any lawyer who is being audited to produce all records and papers concerning property and funds held in trust and to provide ~~such~~ explanations as may be required for the audit.  Records of general accounts are not required to be produced, except to verify that trust money has not been deposited in them.  If it has been determined that trust money has been deposited into a general account, all ~~of the~~ transactions pertaining to any firm account will be subject to audit.

**(i)**  [No Change]

## RULE 6-3.14 SUNSET OF CERTIFICATION AREAS

If any certification committee has not received an initial certification application for 5 consecutive years, the Board of Legal Specialization and Education will petition the Supreme Court of Florida to close the certification area to initial applicants.  The recertification standards of the certification area will remain in effect.

## RULE 7-1.3 ADMINISTRATION

The Clients' Security Fund Program ~~will~~ serve~~s~~ as the staff agency for Clients' Security Fund matters with primary responsibility for:

**(a)**  [No Change]

**(b)** closing claims ~~received which~~that are clearly not covered by the fund;

**(c)** closing claims when the underlying grievance matter has been closed by the bar without discipline, ~~when~~ the lawyer remains a member in good standing, <u>the claimant has died before a recommendation has been made by the committee,</u> or the claimant has withdrawn the claim, except as provided in this chapter;

**(d)** preparing ~~of~~ the committee agenda and recording the minutes of the committee meetings;

**(e)** presenting ~~of~~ claims to the board of governors;

**(f)-(i)** [No Change]

## RULE 7-1.4 DEFINITIONS

For this chapter these terms have the following meanings:

**(a)-(c)** [No Change]

**(d) The Committee.** The "committee" means the <u>"</u>Clients' Security Fund Committee,<u>"</u> a standing committee of the bar.

**(e)** [No Change]

**(f) Reimbursable Loss.** "Reimbursable loss" means a loss suffered by a claimant by reason of misappropriation, embezzlement, or other wrongful taking or conversion of money or other property by a member of The Florida Bar when acting:

(1)-(4)  [No Change]

(5)  as the claimant's lawyer where a nonlawyer employee commits the misappropriation, embezzlement, or other wrongful taking or conversion ~~provided, however, that such a relationship was not for a wrongful purpose and the claimant was not guilty of any bad faith in putting the money or other property in possession or control of the lawyer~~.

**(g)-(i)** [No Change]

## Comment

Rule 7-1.4 is the definitional section of the Clients' Security Fund rules. Subdivision (f) defines what is a reimbursable loss. If a claim does not fall within the definition of a reimbursable loss, a claim cannot be paid.

Central to the definition of a reimbursable loss is the existence of a lawyer-client relationship. If the lawyer was not acting in the capacity of a lawyer, the loss is not reimbursable. For this reason, subdivision (f)(2) states that the lawyer must be acting in a fiduciary capacity customary to the practice of law. This requires that but for the fact that the individual was a lawyer, the individual would not have been acting in the fiduciary capacity. For instance, if the lawyer is appointed by the court to act as personal representative, the relationship would be customary to the practice of law, and the loss reimbursable. On the other hand, if an individual is acting in a capacity unrelated to a lawyer-client relationship where ~~their~~that person's status as a lawyer is not material to the claim, the loss would not be reimbursable.

As noted in the Rules of Professional Conduct, when a client contracts for legal services, the client establishes a relationship not only with the individual lawyer but may also establish a relationship with the law firm. Subdivision (f)(4) recognizes this. As a result, for purposes of determining whether the claimed loss is a reimbursable loss, it is assumed that the relationship is with both the individual lawyer and the law firm. Therefore, if a client enters into a lawyer-client relationship with lawyer A but another lawyer in the law firm commits the misappropriation, embezzlement, or other wrongful taking or conversion of money or other property, the claim may be considered a reimbursable loss. All other prerequisites to payment apply to the claim and will be considered in analyzing the claim and recommending denial or payment. This includes, but is not limited to, the requirement that the defalcating lawyer no longer be a member in good standing. However, it is not required that the lawyer the claimant hired, lawyer A, be disciplined or no longer be in good standing as lawyer A may be innocent of any ethical wrongdoing not having taken part in the theft. Failure to consider such a loss a reimbursable loss will unjustly penalize the claimant

and subject lawyer A to discipline for theft by others over whom the lawyer has no control.

Subdivision (f)(5) creates an exception for the requirement that a lawyer-client relationship exist if the theft is by a nonlawyer employee of the lawyer or law firm. As noted above, the claimant has hired the lawyer or law firm and should not be penalized for theft by a nonlawyer employee of the firm over whom The Florida Bar does not have disciplinary jurisdiction. Consequently, if the theft is by a nonlawyer employee, the claim may be considered a reimbursable loss and analyzed as provided elsewhere in this chapter.

## RULE 7-2.3 PAYMENTS

**(a) Payment is Discretionary.** The board or the committee may grant monetary relief up to the amount of ~~their~~its authority as set forth in this chapter if either determines that a reimbursable loss has been sustained by a claimant and the circumstances warrant relief, taking into consideration the resources of the fund and the claim's priority. Any grant of monetary relief is solely at the board or the committee's discretion within its respective authority and is not a right of any claimant. No reimbursement will be made from the fund unless and until reimbursement has been authorized by the board or the committee within its respective authority, and the claimant has executed assignments or other documents as reasonably requested by the board or committee. Staff may require appropriate documentation that conditions imposed on reimbursement of the claim have been satisfied and that the identity of the proper party or party's representative is verified prior to payment. Neither the bar, the board, the committee, nor staff will incur any liability for nonpayment of claims or for erroneous payments. The decision of the board is final and not subject to appeal or other review.

**(b)-(c)** [No Change]

## Comment

Payment from the Clients' Security Fund is discretionary. There is no right to payment. If approved, the amount of payment is

limited by these rules and the amount in the fund.  Approved claims may include only the amount paid in attorney's fees or the amount of the misappropriation.  Other damages incurred by the claimant will not be reimbursed.  For example, the fund will not reimburse loss of interest, charges for telephone calls or travel, the difference between the settlement amount and the amount the claimant thought the matter should have been settled for, the loss in value of an item or property, or other sums not paid directly to the lawyer.  If it is determined that part of the money misappropriated by the lawyer included sums to be used to pay a claimed lien, the amount of the lien will not be deducted from the loss.  The claimant is liable for the lien.

Before payment, staff will contact the claimant to obtain information necessary for payment.  If staff learns that the claimant has died, staff will request documentation regarding the claimant's estate and may only issue payment after the documentation has been provided and the proper payee is identified.  If staff is in doubt regarding the proper payee, staff will seek guidance from a designated reviewer.

## RULE 7-2.4 PREREQUISITES TO PAYMENT

**(a)  Members in Good Standing.**  Payments from the fund will not be made unless the lawyer is suspended, deceased, placed on the inactive list for incapacity not related to misconduct, or has had the member's status as a member of The Florida Bar revoked or terminated.  However, if the theft is by a nonlawyer employee of the lawyer or law firm, a payment may be made even if the lawyer remains in good standing.  A claim against a member in good standing will be held until final disposition of the disciplinary matter.  A claim alleging that a suspended lawyer took fees for legal services ~~during the period~~after the entry of an order of suspension will be processed in accordance with these rules.  A claim alleging that a lawyer who has had the lawyer's status as a member of The Florida Bar revoked or terminated took fees for legal services after the lawyer's status was revoked or terminated will be closed by staff.

**(b)  Complaints Required.**  The filing of a grievance complaint with The Florida Bar against the ~~attorney~~lawyer claimed against may be required as a prerequisite to the consideration of a Clients' Security Fund claim.  The committee may require as prerequisites to the granting of relief from the fund that the claimant file a complaint against the lawyer with the appropriate state attorney's office; file a civil suit in an appropriate court; or cooperate with the committee in appropriate proceedings against the lawyer.  It is not a prerequisite to claims against deceased members that discipline was imposed or pending at the time of the death.

**(c)-(d)**  [No Change]

**(e)  Proof of Payment.**  A claimant must provide credible evidence that the funds the claimant seeks to recover were in the lawyer's possession or control before a claim may be approved.  The following may be used to establish the payment, the amount of the payment, or the amount of the loss:

(1)-(3)  [No Change]

(4)  a finding in an audit performed by a Florida Bar staff auditor.

## Comment

At times, the fund receives claims against a lawyer where the theft was by a nonlawyer employee of the lawyer or law firm.  As stated elsewhere in these rules, the fund may require that the claimant file a grievance complaint against the lawyer.  Rather than resulting in suspension or disbarment, the grievance may result in diversion, a finding of minor misconduct, or a finding of probable cause.  Should this be the case, the lawyer would remain in good standing.  As the claimant hired the lawyer or law firm, the claimant should not be penalized for theft by a nonlawyer employee of the firm and discipline should not be imposed for the sole purpose of meeting a prerequisite to payment.  Therefore, under this rule, the status of the lawyer, in and of itself, will not act as a bar to payment of claims where the theft is by a nonlawyer employee of the lawyer or law firm.  All other prerequisites to payment, including, but not limited to, exhaustion of remedies,

apply to the claim and will be considered in analyzing the claim and recommending denial or payment.  The prerequisite of exhaustion of remedies may include the claimant filing a <u>civil</u> suit against the lawyer, law firm, or nonlawyer employee.

This rule requires that a claim be filed within 2 years after the date the disciplinary action becomes final.  If a claim is brought due to the death of the lawyer, the claim must be brought within 2 years after the date of the lawyer's death.  However, for good cause shown, a claim filed beyond the 2<u>-</u>year period may be considered.  The following are examples of good cause:

(i)  conduct on the part of the lawyer ~~such~~ that <u>led</u> the claimant ~~was~~<u>to</u> reasonably ~~led to~~ believe that the lawyer was working on the case, had not resolved the matter, or would reimburse the claimant for the loss; or

(ii)  an award of restitution by a court or order by the supreme court that the lawyer must repay the claimant prior to reinstatement if the claimant reasonably relied on the award or order and delayed filing a claim in anticipation of reimbursement; or

(iii)  conduct on the part of the claimant showing the claimant was trying to exhaust remedies.

However, even if good cause is found, a claim must be filed within 4 years from the date the disciplinary action becomes final or the date of the lawyer's death.  Claims filed outside of this time period will be closed.

### RULE 7-2.5 CLAIMS ORDINARILY DENIED

**(a)-(b)**  [No Change]

**(c)  Claims by Entities.**  The committee and the board ordinarily will not consider claims by government agencies, institutional lenders, insurance companies, publicly owned entities including their subsidiaries and affiliates, entities ~~which~~<u>that</u> fail to disclose to the committee the names and addresses of their direct

and indirect beneficial and record owners, and subrogees, brought on their behalf and not as representatives.

**(d)  Payment from Other Sources.**  No claim will be approved where the defalcating lawyer was bonded in any capacity ~~which~~that protected the rights of the claimant, where the defalcating lawyer was insured under a lawyers' professional liability policy or a policy of a similar nature ~~which~~that protected the rights of the claimant, or where the claim ~~might be~~is payable from any other source. However, the committee, may recommend payment of the difference of what the claimant received from the bond, insurance policy, or other source and the amount of the loss if the monies from the bond, insurance policy, or other source were exhausted and additional recovery cannot be sought from the bond, insurance policy, or other source.

**(e)  Useful Services.**  The claim may be denied if services were performed that were useful to the claimant.

(1)  A lawyer may be deemed to have provided useful services to a claimant when, after accepting a fee from the claimant, the lawyer:

(~~1~~A)  files a pleading or other document on behalf of the ~~client~~claimant that moves the ~~client's~~claimant's case or matter forward or protects the ~~client's~~claimant's interests, regardless of the quality of the pleading or other document;

(~~2~~B)  engages in substantive communication about the matter for which the lawyer was hired;

(~~3~~C)  attends a court proceeding or proceedings that advance the case or cause of the ~~client~~claimant or protects the ~~client's~~claimant's interests;

(~~4~~D)  engages in investigation or discovery;

(~~5~~E)  attends a mediation or arbitration or other alternative dispute resolution proceeding;

(6F) prepares a document or documents minimally suitable for use by the ~~client~~claimant in a legal proceeding or transactional matter; or

(7G) provides legal advice and counsel to the ~~client~~claimant.

(2) The lawyer will not be deemed to have provided useful services when the services were rendered for a claimant who hired the lawyer:

(A) after the entry of an order of suspension; or

(B) before the entry of an order of suspension if the services were on a new matter accepted or begun after the entry of the order of suspension.

**(f)** [No Change]

**(g) Unclean Hands.** A claim may be denied if the committee finds that the claimant entered into the lawyer-client relationship for a wrongful purpose; acted in bad faith in putting the money or other property in possession or control of the lawyer; used the lawyer-client relationship or knowingly permitted the lawyer to use the lawyer-client relationship to commit fraud, deception, theft, or other misconduct; or if the claimant's conduct reflects acts or omissions amounting to unclean hands on the part of the claimant in connection with the claimed loss or the underlying lawyer-client relationship.

## Comment

The existence of a lawyer-client relationship is central to the issue of whether a loss is reimbursable. If the lawyer is not acting in the capacity of a lawyer, the loss is not reimbursable. Therefore, the loss will be denied if an individual is acting in a capacity unrelated to a lawyer-client relationship where the status as a lawyer is not material to the claim~~, the loss will be denied~~.

The rules allow the committee to recommend payment of the difference between what the claimant received and the loss when

payment is available from specific other sources.  However, the claim will be denied for failure to exhaust remedies if the claimant does not participate in the process to receive payment available from other sources, ~~the claim will be denied for failure to exhaust remedies~~.

Claims based on investment advice ordinarily are not reimbursable.  Failure of an investment to perform as represented to or anticipated by the claimant is not a reimbursable loss.  Theft or misappropriation of money or property by a lawyer where the lawyer represented to the claimant that the money or property would be used for an investment when no investment was made may be considered a reimbursable loss.  In those circumstances, the funds were obtained by fraud or a ruse for the purpose of being misappropriated by the lawyer.  No investment existed, nor was it the intent of the lawyer to invest the funds.  As with all other claims, all claim prerequisites must be met, including that the loss was the result of a direct and current lawyer-client relationship.  Factors to consider in determining whether the loss was due to a direct and current lawyer-client relationship include the number, nature, and timing of prior transactions between the claimant and the lawyer.

## RULE 10-2.1 GENERALLY

Whenever used in these rules, the following words or terms have the following meaning unless the use of the word or term clearly indicates a different meaning:

**(a)  ~~Unlicensed Practice of Law.~~**  ~~The unlicensed practice of law means the practice of law, as prohibited by statute, court rule, and case law of the state of Florida.~~

**(b)  ~~Paralegal or Legal Assistant.~~**  ~~A paralegal or legal assistant is a person qualified by education, training, or work experience, who works under the supervision of a member of The Florida Bar, an out-of-state lawyer engaged in the authorized practice of law in Florida or a foreign lawyer engaged in the authorized practice of law in Florida and who performs specifically delegated substantive legal work for which the supervising lawyer is responsible.  A nonlawyer~~

or a group of nonlawyers may not offer legal services directly to the public by employing a lawyer to provide the lawyer supervision required under this rule. It constitutes the unlicensed practice of law for a person who does not meet the definition of paralegal or legal assistant to use the title paralegal, legal assistant, or other similar term in offering to provide or in providing services directly to the public.

**(c) Nonlawyer or Nonattorney.** For purposes of this chapter, a nonlawyer or nonattorney is an individual who is not a member of The Florida Bar. This includes, but is not limited to, lawyers admitted in other jurisdictions, law students, law graduates, applicants to The Florida Bar, disbarred lawyers, and lawyers who have resigned from The Florida Bar. A suspended lawyer, while a member of The Florida Bar during the period of suspension as provided elsewhere in these rules, does not have the privilege of practicing law in Florida during the period of suspension. For purposes of this chapter, it constitutes the unlicensed practice of law for a lawyer admitted in a jurisdiction other than Florida to advertise to provide legal services in Florida which the lawyer is not authorized to provide.

**(d) This Court or the Court.** This court or the court means the Supreme Court of Florida.

**(e) Bar Counsel.** Bar counsel is a member of The Florida Bar representing The Florida Bar in any proceeding under these rules and includes UPL counsel and UPL staff counsel.

**(f) Respondent.** A respondent is a nonlawyer who is accused of engaging in the unlicensed practice of law or whose conduct is under investigation.

**(g) Referee.** A referee is the judge or retired judge appointed to conduct proceedings as provided under these rules.

**(h) Standing Committee**. The standing committee is the committee constituted according to the directives contained in these rules.

**(i) Circuit Committee.** A circuit committee is a local unlicensed practice of law circuit committee.

**(j) UPL Counsel.** UPL counsel is the director of the unlicensed practice of law department and an employee of The Florida Bar employed to perform such duties, as may be assigned, under the direction of the executive director.

**(k) UPL.** UPL is the unlicensed practice of law.

*(l)* **The Board or Board of Governors.** The board or board of governors is the Board of Governors of The Florida Bar.

**(m) Designated Reviewer.** The designated reviewer is a member of the board of governors responsible for review and other specific duties as assigned by the board of governors with respect to a particular circuit committee or matter. If a designated reviewer recuses or is unavailable, any other board member may serve as designated reviewer in that matter. The designated reviewer will be selected by the board members from the circuit of that circuit committee. If circuits have an unequal number of circuit committees and board members, review responsibility will be reassigned to equalize workloads. On reassignments, responsibility for all pending cases from a particular committee passes to the new designated reviewer. UPL counsel will be given written notice of changes in the designated reviewing members for a particular committee.

**(n) Executive Committee.** The executive committee is the executive committee of the Board of Governors of The Florida Bar. All acts and discretion required by the board under these rules may be exercised by its executive committee between meetings of the board as may be authorized by standing policies of the board of governors.

**(a) Bar Counsel.** "Bar counsel" is a member of The Florida Bar representing The Florida Bar in any proceeding under these rules and includes UPL counsel and UPL staff counsel.

**(b) The Board or Board of Governors.** The "board" or "board of governors" is the Board of Governors of The Florida Bar.

**(c)  Circuit Committee.**  A "circuit committee" is a local unlicensed practice of law circuit committee.

**(d)  This Court or the Court.**  "This court" or "the court" means the Supreme Court of Florida.

**(e)  Designated Reviewer.**  The "designated reviewer" is a member of the board of governors responsible for review and other specific duties as assigned by the board of governors with respect to a particular circuit committee or matter.  If a designated reviewer recuses or is unavailable, any other board member may serve as designated reviewer in that matter.  The designated reviewer will be selected by the board members from the circuit of that circuit committee.  If circuits have an unequal number of circuit committees and board members, review responsibility will be reassigned to equalize workloads.  On reassignments, responsibility for all pending cases from a particular committee passes to the new designated reviewer.  UPL counsel will be given written notice of changes in the designated reviewing members for a particular committee.

**(f)  Executive Committee.**  The "executive committee" is the executive committee of the board of governors.  All acts and discretion required by the board under these rules may be exercised by its executive committee between meetings of the board as may be authorized by standing policies of the board of governors.

**(g)  Nonlawyer or Nonattorney.**  For purposes of this chapter, a "nonlawyer" or "nonattorney" is an individual who is not a member of The Florida Bar.  This includes, but is not limited to, lawyers admitted in other jurisdictions, law students, law graduates, applicants to The Florida Bar, disbarred lawyers, and lawyers who have resigned or been revoked from The Florida Bar.  A suspended lawyer, while a member of The Florida Bar during the period of suspension as provided elsewhere in these rules, does not have the privilege of practicing law in Florida during the period of suspension.  For purposes of this chapter, it constitutes the unlicensed practice of law for a lawyer admitted in a jurisdiction other than Florida to advertise to provide legal services in Florida that the lawyer is not authorized to provide.

**(h)  Paralegal or Legal Assistant.**  A "paralegal" or "legal assistant" is a person qualified by education, training, or work experience, who works under the supervision of a member of The Florida Bar, an out-of-state lawyer engaged in the authorized practice of law in Florida or a foreign lawyer engaged in the authorized practice of law in Florida and who performs specifically delegated substantive legal work for which the supervising lawyer is responsible.  A nonlawyer or a group of nonlawyers may not offer legal services directly to the public by employing a lawyer to provide the lawyer supervision required under this rule.  It constitutes the unlicensed practice of law for a person who does not meet the definition of paralegal or legal assistant to use the title paralegal, legal assistant, or other similar term in offering to provide or in providing services directly to the public.

**(i)  Respondent.**  A "respondent" is a nonlawyer who is accused of engaging in the unlicensed practice of law or whose conduct is under investigation.

**(j)  Referee.**  A "referee" is the judge or retired judge appointed to conduct proceedings as provided under these rules.

**(k)  Standing Committee**.  The "standing committee" is the committee constituted according to the directives contained in these rules.

**(*l*)  Unlicensed Practice of Law.**  The "unlicensed practice of law" means the practice of law, as prohibited by statute, court rule, and case law of the state of Florida.

**(m)  UPL.**  "UPL" is the unlicensed practice of law.

**(n)  UPL Counsel.**  "UPL counsel" is the director of the unlicensed practice of law department and an employee of The Florida Bar employed to perform such duties, as may be assigned, under the direction of the executive director.

### RULE 10-2.2 FORM COMPLETION BY A NONLAWYER

**(a)  Supreme Court Approved Forms.**  It shallis not constitute the unlicensed practice of law for a nonlawyer to engage in limited

oral communication to assist a self-represented person in the completion of blanks on a Supreme Court Approved Form. In assisting in the completion of the form, oral communication by nonlawyers is restricted to those communications reasonably necessary to elicit factual information to complete the blanks on the form and inform the self-represented person how to file the form. The nonlawyer may not give legal advice or give advice on remedies or courses of action. Legal forms approved by the Supreme Court of Florida which may be completed as set forth ~~herein shall only include and~~in this rule are limited to the following forms, and any other legal form, whether promulgated or approved by the Supreme Court of Florida, is not a Supreme Court Approved Form for the purposes of this rule:

(1) forms ~~which~~that have been approved by the Supreme Court of Florida specifically ~~pursuant to~~under the authority of rule 10-2.1(a) [(formerly rule 10-1.1(b)]) of the Rules Regulating The Florida Bar;

(2)-(3) [No Change]

**(b) Forms ~~Which~~That Have Not Been Approved by the Supreme Court of Florida.**

(1) It ~~shall~~is not ~~constitute~~the unlicensed practice of law for a nonlawyer to engage in a secretarial service, typing forms for self-represented persons by copying information given in writing by the self-represented person into the blanks on the form. The nonlawyer must transcribe the information exactly as provided in writing by the self-represented person without addition, deletion, correction, or editorial comment. The nonlawyer may not engage in oral communication with the self-represented person to discuss the form or assist the self-represented person in completing the form.

(2) It ~~shall~~is ~~constitute~~the unlicensed practice of law for a nonlawyer to give legal advice, ~~to~~give advice on remedies or courses of action, or ~~to~~draft a legal document for a particular self-represented person. It is also ~~constitutes~~the unlicensed

practice of law for a nonlawyer to offer to provide legal services directly to the public.

**(c)  As to All Legal Forms.**

(1)  Except for forms filed by the petitioner in an action for an injunction for protection against domestic or repeat violence, the following language shallmust appear on any form completed by a nonlawyer and any individuals assisting in the completion of the form shallmust provide their names, business names, addresses, and telephone numbers on the form:

This form was completed with the assistance of:

.....(Name of Individual).....

.....(Name of Business).....

.....(Address).....

.....(Telephone Number).....

(2)  Before a nonlawyer assists a person in the completion of a form, the nonlawyer shallmust provide the person with a copy of a disclosure which contains the following provisions:

.....(Name)..... told me that he/she is a nonlawyer and may not give legal advice, cannot tell me what my rights or remedies are, cannot tell me how to testify in court, and cannot represent me in court.

Rule 10-2.1(bh) of the Rules Regulating The Florida Bar defines a paralegal as a person who works under the supervision of a member of The Florida Bar, an out-of-state lawyer engaged in the authorized practice of law in Florida, or a foreign lawyer engaged in the authorized practice of law in Florida and who performs specifically delegated substantive legal work for which a member of The Florida Barthe supervising lawyer is responsible.  Only persons who meet the definition may call themselves paralegals.  .....(Name)..... informed me that he/she is not a paralegal as defined by the rule and cannot call himself/herself a paralegal.

.....(Name)..... told me that he/she may only type the factual information provided by me in writing into the blanks on the form. Except for typing, .....(Name)..... may not tell me what to put in the form and may not complete the form for me. However, if using a form approved by the Supreme Court of Florida, .....(Name)..... may ask me factual questions to fill in the blanks on the form and may also tell me how to file the form.

..........    I can read English

..........    I cannot read English but this notice was read to me by .....(Name)..... in .....(Language)..... which I understand.

(3) A copy of the disclosure, signed by both the nonlawyer and the <u>assisted</u> person, ~~shall~~<u>must</u> be given to the <u>assisted</u> person to retain and the nonlawyer ~~shall~~<u>must</u> keep a copy in the <u>assisted</u> person's file. The nonlawyer ~~shall~~<u>must</u> also retain copies for at least 6 years of all forms given to the <u>assisted</u> person ~~being assisted~~. The disclosure does not act as or constitute a waiver, disclaimer, or limitation of liability.

## RULE 10-6.3 RECOMMENDATIONS AND DISPOSITION OF COMPLAINTS

**(a) Circuit Committee Action.** On concluding its investigation, the circuit committee will report to bar counsel regarding the disposition of those cases closed, those cases where a letter of advice has been given, those cases where a cease and desist affidavit has been accepted, those cases where a cease and desist affidavit with monetary penalty <u>or restitution</u> has been recommended, and those cases where litigation is recommended. A majority of those present is required for all circuit committee recommendations; however, the vote may be taken by mail<u>,</u> <u>electronic means,</u> or telephone rather than at a formal meeting. All recommendations for a cease and desist affidavit with monetary penalty <u>or restitution</u> must be reviewed by the standing committee for final approval. All recommendations for litigation under these rules must be reviewed by the standing committee and a designated reviewer for final approval prior to initiating litigation.

**(b)** [No Change]

**(c) Review by Designated Reviewer.** All recommendations by the standing committee that litigation be initiated must be reviewed by a designated reviewer. If the designated reviewer does not act on the recommendation within 21 days following the mailing date of the notice of standing committee action, the standing committee action will become final. If the designated reviewer disagrees with all or any part of the recommendation for litigation, the designated reviewer will make a report and recommendation to the board of governors, and the board will make a final determination regarding the litigation.

## RULE 10-7.2 PROCEEDINGS FOR INDIRECT CRIMINAL CONTEMPT

**(a) Petitions for Indirect Criminal Contempt.** Nothing ~~within~~in these rules prohibits or limits the right of the court to issue a permanent injunction in lieu of or in addition to any punishment imposed for an indirect criminal contempt.

(1) *Proceedings.* ~~Upon receiving a sworn petition of the president, executive director of The Florida Bar, or the chair of the standing committee alleging facts indicating that a person, firm, or corporation is or may be unlawfully practicing law or has failed to pay restitution as provided elsewhere in this chapter, and containing a prayer for a contempt citation, the court may issue an order directed to the respondent,~~The Florida Bar's president, executive director, or UPL standing committee chair may file a sworn petition seeking contempt for a person, firm, or corporation for unlawfully practicing law or failing to pay restitution under this chapter. The sworn petition must contain a prayer for a contempt citation. On receipt of the sworn petition, the court may issue an order to the respondent stating the essential allegations charged and requiring the respondent to appear before a referee appointed by the court to show cause why the respondent should not be held in contempt of ~~this~~the court for the unlicensed practice of law or for the failure to pay restitution as ordered. The referee must be a circuit judge of the ~~state~~State of Florida. The order must specify the time and place of the hearing~~, and a.~~ A reasonable time must be allowed for

preparation of the defense after service of the order on the respondent.

(2) *Respondent's Motions and Answer.* The respondent, personally or by counsel, may move to dismiss the order to show cause, move for a statement of particulars, or answer the order by ~~way of~~ explanation or defense. All motions and the answer must be in writing. A respondent's ~~omission~~failure to file motions or answer ~~will not be deemed~~is not an admission of guilt of the contempt charged.

**(b) Indigency of Respondent.** Any respondent who is determined to be indigent by the referee is entitled to the appointment of counsel.

(1) [No Change]

(2) *Determination.* After reviewing the affidavit and questioning the respondent, the referee will determine whether the respondent is indigent ~~or the respondent is not indigent~~.

In making this determination, the referee must consider the applicable statutory criteria used by the clerk of court when determining indigent status and the applicable statutory factors considered by a court when reviewing that determination.

**(c) Proceedings Before the Referee.** Proceedings before the referee must be in accordance with the following:

(1) *Venue.* Venue for the hearing before the referee must be in the county where the respondent resides or where the alleged offense was committed, whichever is designated by the court.

(2) *Order of Arrest.* The court or referee may issue an order of arrest of the respondent if the court or referee has reason to believe the respondent will not appear in response to the order to show cause. The respondent will be admitted to bail in the manner provided by law in criminal cases.

(3) *Hearings.* The respondent will be arraigned and enter a plea at the time of the hearing before the referee, or prior on

request. A subsequent hearing to determine the guilt or innocence of the respondent will follow a plea of not guilty. The date and time of the subsequent hearing will be set at the arraignment. The respondent is entitled to be represented by counsel, have compulsory process for the attendance of witnesses, and confront witnesses against the respondent. The respondent may testify in the respondent's own defense. No respondent may be compelled to testify. A presumption of innocence will be accorded the respondent. The Florida Bar acting as prosecuting authority must prove guilt of the respondent beyond a reasonable doubt.

(4) *Subpoenas.* Subpoenas for the attendance of witnesses and the production of documentary evidence will be issued in the name of the court by the referee ~~up~~on request of a party. Failure or refusal to comply with any subpoena is a contempt of court and may be punished by the court or by any circuit court where the action is pending or where the contemnor may be found, as if the refusal were a contempt of that court.

(5) *Referee.* The referee will hear all issues of law and fact and all evidence and testimony presented will be transcribed.

(6) *Judgment.* At the conclusion of the hearing, the referee will sign and enter of record a judgment of guilty or not guilty. ~~There should be included in a~~A judgment of guilty should include a recital of the facts constituting the contempt of which the respondent has been found and adjudicated guilty~~, and the~~. The costs of prosecution, including investigative costs and restitution, if any, will be included and entered in the judgment rendered against the respondent. The amount of restitution must be specifically set forth in the judgment and must not exceed the amount paid to respondent by complainant(s). The judgment must also state the name of ~~the~~each complainant~~(s)~~ to whom restitution is to be made, the amount of restitution to be made, and the date by which it must be completed. The referee has discretion over the timing of payments, ~~over~~ how those payments are to be distributed to multiple complainant~~(s)~~, and whether restitution will bear interest at the legal rate provided for judgments in this state. In determining the amount of

restitution to be paid to complainant(s), the referee will consider testimony or any documentary evidence that shows the amount paid to respondent by complainant(s), including cancelled checks, credit card receipts, receipts from respondent, and any other documentation evidencing the amount of payment. Nothing in this section precludes an individual from seeking redress through civil proceedings to recover fees or other damages.

(7) *Mitigation and Sentence.* ~~Prior to~~Before the pronouncement of a recommended sentence on a judgment of guilty, the referee will inform the respondent of the accusation and judgment and afford the opportunity to present evidence of mitigating circumstances. The recommended sentence will be pronounced in open court and in the presence of the respondent.

**(d) Record.**

(1) *Contents.* The record includes all items properly filed in the cause including pleadings~~,~~; recorded testimony, if transcribed~~,~~; exhibits in evidence~~,~~; and the report of the referee.

(2) [No Change]

(3) *Supplementing or Removing Items from the Record.* The respondent and The Florida Bar may seek to supplement the record or have items removed from the record by filing a motion with the referee for that purpose~~, provided~~only if the motion is filed within 15 days of the service of the index. Denial of a motion to supplement the record or to remove an item from the record may be reviewed in the same manner as provided for in the rule on appellate review under these rules.

**(e) Review by the Supreme Court of Florida.** The referee must forward the judgment and recommended sentence~~,~~ on a finding of "guilty~~,~~" together with the entire record of proceedings ~~must be forwarded~~ to the Supreme Court of Florida for approval, modification, or rejection based ~~upon~~ the law. The petitioner or the respondent may file objections, together with a supporting brief or memorandum of law, to the referee's judgment and recommended

sentence within 30 days of the date of filing with the court of the referee's judgment, recommended sentence, and record of proceedings, or in. the case where a party seeksA party may seek review of a referee's denial to supplement or remove an item from the record, within 30 days after the court issues its ruling on that matter. Denial of a motion to supplement the record or to remove an item from the record may be reviewed in the same manner as provided for in the rule on appellate review under these rules.

A responsive brief or memorandum of law may be filed within 20 days after service of the initial brief or memorandum of law. A reply brief or memorandum of law may be filed within 20 days after service of the responsive brief or memorandum of law.

**(f)-(g)** [No Change]

## RULE 14-2.1 GENERALLY

**(a) Appointment of Members; Quorum.** The board of governors shallwill appoint a standing committee on grievance mediation and fee arbitration comprised of:

(1) 6 lawyers who are certifiedapproved as mediators under this chapter;

(2) 3 nonlawyers who are certifiedapproved as mediators under this chapter;

(3) 6 lawyers who are certifiedapproved as arbitrators under this chapter; and

(4) 3 nonlawyers who are certifiedapproved as arbitrators under this chapter.

The board of governors will appoint a chair and vice-chair of the committee from the members listed above. A majority of committee members of the committee constitutes a quorum. The lawyer members of the committee shallmust be members of The Florida Bar in good standing.

**(b) Terms.** All members shall beare appointed for 3-year staggered terms, each term commencing on July 1 of the year of

appointment and ending on June 30 of the third year thereafter ~~consistent with the bar's fiscal year~~. Terms shall be staggered so that with one-third of the committee members ~~of the committee shall be~~ appointed each year.  No committee member may serve for more than 2 consecutive full terms.

**(c)  Duties.**  The standing committee ~~shall administer~~administers the program, ~~certify~~approves mediators and arbitrators for the program, ~~promulgate~~promulgates necessary standards, forms, and documents, and ~~make~~makes recommendations~~, as necessary,~~ to the board of governors for changes in the program.

## SUBCHAPTER 14-3 ~~CERTIFICATION~~APPROVAL OF PROGRAM MEDIATORS AND ARBITRATORS

## RULE 14-3.1 APPLICATION REQUIRED

**(a)  Applications.**  Persons wishing to become program mediators or arbitrators ~~shall~~must apply to the committee for its review and ~~certification~~approval.  The committee ~~shall promulgate~~promulgates standards and forms for ~~certification hereunder~~approval.  Membership in The Florida Bar ~~shall~~is not ~~be~~ required for ~~certification~~approval.

**(b)  CLE Credit for Service.**  Members of The Florida Bar who are program mediators and arbitrators ~~shall be entitled to~~may receive a maximum of 5 hours of CLE credit in each reporting period in the area of ethics for service in the program as provided in the policies adopted under this chapter.

## RULE 20-5.1 GENERALLY

The following individuals are ineligible for registration as a Florida Registered Paralegal or for renewal of a registration that was previously granted:

~~(a)~~**(a)**  a person who is currently suspended or disbarred or who has resigned or been revoked in lieu of discipline from the practice of law in any state or jurisdiction;

(b̶)**(b)** a person who has been convicted of a felony in any state or jurisdiction and whose civil rights have not been restored;

(c̶)**(c)** a person who has been found to have engaged in the unlicensed (unauthorized) practice of law in any state or jurisdiction within 7 years of the ~~date of~~ application date;

(d̶)**(d)** a person whose registration or license to practice has been terminated or revoked for disciplinary reasons by a professional organization, court, disciplinary board, or agency in any jurisdiction;

(e̶)**(e)** a person who is no longer primarily performing paralegal work as defined elsewhere in these rules;

(f̶)**(f)** a person who fails to comply with prescribed continuing education requirements as set forth elsewhere in this chapter; or

(g̶)**(g)** a person who is providing services directly to the public as permitted by case law and subchapter 10-2 of these rules.

## RULE 21-3.1 CONTINUING LEGAL EDUCATION

**(a)-(b)** [No Change]

**(c) Minimum Ongoing Requirement.** A lawyer certified to practice law in Florida as a military spouse must complete ~~10~~11 hours of continuing legal education during each year the authorization is renewed, including 1 hour of technology each year and 2 hours of legal ethics, professionalism, bias elimination, substance abuse, or mental illness awareness each year.